**FILED**
U.S. District Court
District of Kansas

AUG 1 4 2012

Clerk, U.S. District Court
By_____Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Bill J. Cary

_____  )
_____  )
_____  )
_____  )
(Enter above the full name of the Plaintiff(s)  )

vs.

Case Number: 12 - 1292-JTM-KMH

Kim W. Lindsay (Ferty)
Name
313 Pine St.
Street and number
Atwood   KS   66943
City       State      Zip Code

(Enter above the full name and address of the
Defendant in this action - list the name and
address of any additional defendants on the back
side of this sheet).

**CIVIL COMPLAINT**

I.      Parties to this civil action:

(In item A below, place your name in the first blank and place your present address in the
second blank.  Do the same for additional plaintiffs, if any, on the back side of this sheet).

A.      Name of plaintiff   Bill J. Cary

        Address   1209 N. Central Ave.

        Flagler Beach, Fl 32136

(In item B below, write the full name of the defendant in the first blank. In the second blank, write the official position of the defendant. Use item C for the names and positions of any additional defendants).

B.   Defendant _Thomas G Burehardt_ is

employed at _Lawyer_

C.   Additional Defendants _Straub International, Ron_
_Straub, Scott Dworof_

II.   Jurisdiction:

(Complete one or more of the following subparagraphs, A., B.1, B.2., or B.3., whichever is applicable.)

A.   (If Applicable) Diversity of citizenship and amount:

1.   Plaintiff is a citizen of the State of _____.

2.   The first-named defendant above is either

a.   a citizen of the State of _____ ___; or

b.   a corporation incorporated under the laws of the State of _____ and having its principal place of business in a State other than the State of which plaintiff is a citizen.

3.   The second-named defendant above is either

a.   a citizen of the State of _____; or

b.   a corporation incorporated under the laws of the State of _____ and having its principal place of business in a State other than the State of which plaintiff is a citizen.

(If there are more than two defendants, set forth the foregoing information for

2

each additional defendant on a separate page and attach it to this complaint.)

Plaintiff states that the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000.00).

B.      (If applicable)  Jurisdiction founded on grounds other than diversity (Check any of the following which apply to this case).

    \_\_\_\_\_  1.      This case arises under the following section of the Constitution of the United States or statute of the United States (28 U.S.C. §1331): Constitution, Article\_\_\_\_\_, Section\_\_\_\_\_; Statute, US Code, Title <u>1 8</u>, Section <u>1961</u>.

    \_\_\_\_\_  2.      This case arises because of violation of the civil or equal rights, privileges, or immunities accorded to citizens of, or persons within the jurisdiction of, the United States (28 U.S.C. §1343).

    \_\_\_\_\_  3.      Other grounds (specify and state any statute which gives rise to such grounds):

           <u>1 8 Section 1 9(1) et seq.</u>

III.    Statement of Claim:

(State here a short and plain statement of the claim showing that plaintiff is entitled to relief.  State what each defendant did that violated the right(s) of the plaintiff, including dates and places of such conduct by the defendant(s).  Do not set forth legal arguments. If you intend to allege more than one claim, number and set forth each claim in a separate paragraph.  Attach an additional sheet, if necessary, to set forth a short and plain statement of the claim[s].)

Judge C\_\_\_\_\_ awarded sanctions without jurisdiction over the subject matter and fails to meet the requirement of the K S statute for sanctions. Sanction violate the K S Consumer protection act on the sale of a search he bought by the Plaintiff.

3

_____

_____

_____.

IV.  Relief:

(State briefly exactly what judgement or relief you want from the Court.  Do not make legal arguments.)

_The amount of sanctions should be reversed and the money_
_returned to the Plaintiff. Strawn to pay damages_
_for continued defamation and telling an violation of the Consumer Protection Act._

V.  Do you claim the wrongs alleged in your complaint are continuing to occur at the present time?   Yes [ ]  No [X]

VI.  Do you claim actual damages for the acts alleged in your complaint?     Yes [X]   No [ ]

VII.  Do you claim punitive monetary damages? Yes [X]  No [ ]

If you answered yes, state the amounts claimed and the reasons you claim you are entitled to recover money damages.

_The Respondents violated, Racnum of Indiana_
_Statute._

_____

_____

_____

_____.

4

VIII.   Administrative Procedures:

    A.   Have the claims which you make in this civil action been presented through any
type of Administrative Procedure within any government agency? Yes [ ]  No [X]

    B.   If you answered yes, give the date your claims were presented, how they
were presented, and the result of that procedure:

_____

_____

_____

    C.   If you answered no, give the reasons, if any, why the claims made in this action
have not been presented through Administrative Procedures:

_____

_____

_____

IX.   Related Litigation:

Please mark the statement that pertains to this case:

_____   This cause, or a substantially equivalent complaint, was previously filed in
this court as case number _____ and assigned to the
Honorable Judge _____.

_____   Neither this cause, nor a substantially equivalent complaint, previously
has been filed in this court, and therefore this case may be opened as an
original proceeding.

_Bill Lary_
Signature of Plaintiff

_Bill J. Cory_
Name (Print or Type)

5

_Temp, 529 W, 18th St._
Address

_Concordia KS 66901_
City         State      Zip Code

_(785) 243-7125_
Telephone Number

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates ( Wichita      Kansas City     or      Topeka ), Kansas as the location for the
(circle one location)

trial in this matter.

_Bill Cow_
Signature of Plaintiff

## REQUEST FOR TRIAL BY JURY

Plaintiff requests trial by jury ( yes    or    no ).
(circle one)

_Bill Cow_
Signature of Plaintiff

Dated: _12 Aug '12_
(Rev. 8/07)

6

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

# WICHITA

| | | |
|---|---|---|
| Bill J. Cory | ) | |
| Plaintiff, | ) | |
| Kim W. Cudnay, Judge, | ) | Civil Action No. |
| Thomas J. Berscheidt, | ) | Complaint |
| Straub International, | ) | Trial by Jury Demanded |
| Ron Straub and, | ) | |
| Scott Dewell, | ) | |
| Defendants | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES AND OTHER RELIEF
## UNDER K.S.A. §§ 50 – 623 ET SEQ.; TITLE 18 USC.

## §§ 1961 ET SEQ., PENDANT KANSAS STATUTES, AND COMMON LAWS

I. **Jurisdiction**

    1. Defendant Kim W. Cudnay is the Chief Judge of the 12th Judicial District who presided over the action as the District Judge of Republic County.

2. Defendant Thomas J. Berscheidt is an attorney admitted to the practice of law in Kansas who represented Straub International (Straub), Ron Straub, and Scott Derweff.

3. Ron Straub is the majority owner and president of Straub.

4. Personal jurisdiction exists over the Defendants under Title 18 U.S.C. 1965 and Title 28 U.S.C. § 1391 because the claim arose and each Defendant is found, resides, and transacts business in the State of Kansas.

5. Jurisdiction over the subject matter is in this Honorable Court by virtue of the Organized Crime Control Act of 1970 etal, more specifically under Racketeer Influenced and Corrupt Organizations, Title 18 U.S.C. §1964, and under the Doctrine of Pendant Jurisdiction.

## II. **Background**

The Plaintiff bought a Hesston 8450 2001 swather from Straub International, Great Bend, KS. Delivery was accepted 9 May 2007 at his farm in Republic County, KS., and payment was made by trading in his 8200 Hesston swather and a check for $20,000. The 8450 swather was guaranteed to be Field Ready.

(Exh A)

Field Ready simply means that a swather will run and cut hay in a manner as designed by the manufacturer. I relied on Straubs skill as a dealer that the swather would operated to accomplish its intended purpose. The swather constantly broke down and needed major repairs.

Most outstandingly the initial operation of the swather demonstrated that it was unmerchantable. On the first day of operation in the field, one wheel would lock and spin the swather in small, rapid circles. The steering mechanism failed to work and it was impossible to drive the

**1**

swather. If this had happened on a road or state highway, the swather would have crashed into a car or semi-truck causing property damage, injury or death.

### ORDER OF EVENTS

1. Upon delivery a visual and audio inspection showed the sickles and guards were broken and worn-out. Center sections had been welded to the sickle bar and broken loose. The sway bar assembly was knocking due to worn out bearings. The right auger shield was missing. Paint was peeling off due to a mere spraying of paint without preparation of the surface over spaulded rust areas. All tires were half flat. A visual inspection can only discern superficial problems. One must rely on the company and its mechanics to insure the equipment is Field Ready. No reliable dealer ever delivered Field Ready equipment in this condition. Straub agreed to replace the sickles, guards, bearings, and furnish the right safety shield.

2. When testing the operation of the swather, I noticed it was difficult to steer on the road and the upward/downward movement of the header was retarded. Usually this indicates the hydraulic filters and oil are dirty. I replaced the filters and hydraulic oil in the reservoir. This made a 50% improvement, but I had no way to blow out the hydraulic hoses for a complete cleaning.

3. The AC didn't work. I hired a mechanic to re-charge the AC and get it working.

4. The swather had not been greased. In attempting to grease, I found the newly installed bearings by the Straub mechanic were in backwards and couldn't be greased. The grease fitting in one new sickle was broken off. I hired a mechanic to take apart the sway bar assembly and properly install the grease fittings in it and the new sickle.

5. 3 June'07 the swather overheated halfway around the field. The rotary screen was locked in place. I hired a mechanic to disassemble and a bearing was replaced.

6. 5 June, upon returning to the field, the swathers left wheel locked in position at every turn and the swather spun in circles.

2

7. 6 June, the swather lost motor power and stopped after 13/4 swaths. It would not restart. I called Straub and they sent a mechanic from Salina on 7 June. He stated the steering mechanism was worn out and they hauled the swather to Salina the same day.

8. 8 June, I hired the remaining 63 A swathed.

9. 2 July the swather was returned from Salina Straub.

10. 25 July the right auger pan fell out on the ground and crop was spread out behind the header. Upon examination the left auger pan had rusted thru most bolts and was ready to fall off. The center skid shoe was digging up the alfalfa in the field.

11. 5 August I hired a mechanic to replace the auger pans and blow off the bolts on all skid shoes so they could be adjusted with pins and height properly set.

12. 12 August swather wouldn't start requiring 2 new batteries. One old battery was an AGCO original equipment battery 6 years old, having far outlasted the years for an original equipment battery.

13. 9 Sept, the auger clutch assembly was replaced. I had noted previously that the clutch was burned black, Upon removal the clutch fell apart and the steel clutch plates had been so hot they were warped. The feeding problem had caused me to replace the reel belt but this did not remedy the problem even though both sides of the V were glazed from slipping.

14. 10 Sept. the swather stopped in the road on the way to the field. All the hydraulic oil had been lost. The swather was towed out of the road.

15. 11 Sept. the hydraulic leak was due to the main hydraulic filter. Apparently the Salina Straub mechanic did not properly fit the filter seal when he blew out the hydraulic hoses, and replaced the oil and filters.

16. 12 Sept. the swather was repaired but the rotary screen would not turn. This was cleaned with oil removal fluid, and soap and water, but still would not move. Upon inquiry, Lott Implement told me I had to keep the rubber seal coated with talcum powder. This was required every 20 to 20

3

minutes.  The hydraulic fluid warped the rubber and it would no longer provide a seal, necessitating replacement.

## COSTS RESULTING FROM STRAUBS FAILURE TO

## PROVIDE A FIELD READY SWATHER

| | | |
|---|---|---|
| 1. | Replace hydraulic oil filters (Exh1) | 25.03 |
| 2. | Hydraulic Oil (Exh 2) | 74.32 |
| 3. | Repair AC (Exh 1) | 64.50 |
| 4. | Refit grease fittings on sway bar and repair rotary screen (Exh 2) | 226.77 |
| 5. | Auguer Pans/Center skid shoe (Exh 3) | 278.69 |
| 6. | Support bracket (Exh 4) | 132.62 |
| 7. | Skid pin/parts (Exh 4) | 43.25 |
| 8. | Batteries (Exh 5) | 113.44 |
| 9. | Replace Auger pans/cut skid bolts (Exh 5) | 200.00 |
| 10. | Auger Clutch (Exh 6) | 326.01 |
| 11. | Install Auger Clutch (Exh 6) | 80.00 |
| 12. | Drive wheel sprockets (Exh 7) | 133.82 |
| 13. | Remove wheel chains and tow (Exh 7) | 80.00 |
| 14. | Replace wheel chains and well oil (Exh 7) | 120.00 |
| 15. | 15 W-40 hydraulic fluid (Exh 8) | 166.39 |
| 16. | 90 W gear oil (Exh 8) | 17.36 |
| 17. | Rotary screen rubber seal and clamp (Exh 9) | 45.60 |
| 18. | Adjust Straub installed steering shaft to start swather (Exh 9) | 50.00 |
| 19. | Air filter (Exh 10) | 26.84 |
| 20. | 6 June unable to steer swather in field/motor lost all power | |

4

7 June  swather hauled to Straub Salina

8 June  hired Joe Odette to finish swathing hay (Exh 11)                    630.00

2 July  Straub returned swather to farm  (Exh 12)


                                                    Total Costs        $2,774.64


## COUNT I: VIOLATIONS OF K.S.A. 50-626 + 50-627

17.  Straub falsely stated that the swather was Field Ready.  Not only had the swather not been repaired, but had even been serviced.  Upon delivery all four tires were half flat, and it had not even been greased.  Paint was peeling off over spalded rusted tin which had apparently been splashed on to improve the appearance for sale.  All responsible dealers state Field Ready on the front of the contract.  The fact that Field Ready was not listed indicates that Straub intended at the outset to rely on the contract terms of "as is" to circumvent any additional repair work which they knew would be extensive.  Field Ready means it is warranted fit for a particular purpose, i.e., swathing hay.  It would not swath hay.  No repair work had been accomplished.  The foregoing is a deceptive practice under K.S.A. 50-626.  Straubs refusal to pay for additional repairs is evidence of the foregoing.  When the auger pan fell off on or about 4 July, two days after the repair in Salina had been completed, I called Straub and was told Straub had no more money to spend on the swather.  Subsequently, Edna Cory received a bill from Straub for $1001.69 dated 23 August  for work done on the swather when it was repaired in Salina.  (Exh 13)

18.  Straub knew they sold the swather as Field Ready and sent a Straub mechanic from Salina two times to make repairs, eventually hauling the swather to Salina for further repairs.  The foregoing negates the "as is" clause in the contract for by their actions they demonstrated their responsibility to provide the swather as "Field Ready".

19.  A swather does not have a drive train like a car or truck, but operates by hydraulics similar to an airplane.  As such its controls are sensitive to the slightest touch.  There are no foot

brakes.  This swather would lock and start spinning quickly in fast circles at anytime.  Straub sold and delivered a swather that was uncontrollable and, therefore, dangerous to the operator, employees, and property.  When operated on the public roads and state highways. This swather could have started spinning out of control when meeting a car or semi-truck, thereby, causing a hazard and endangering the general public.  The right auger shield was missing upon delivery.  I requested this shield be furnished several times, but it has not been received to date.  The manufacturer's manual requires throughout each section that all shields be in place before operation.  (Exhs 14 & 15) Straub violated K.S.A. 50-624 (f) and 50-627(7) as the swather was unmerchantable for failing to conform in material respects to applicable state and federal statutes for standards of quality and safety.

20.  My traded-in swather sold for $20,000 or better with a cash payment of $20,000, making the amount paid for the swather a nominal $40,000.  For the swather I bought, this certainly paid any dealer costs to meet the Field Ready requirement.  The first day in the field the swather overheated.  The second day it was inoperable as the steering was causing the swather to spin in small circles.  Later the center skid shoe was tearing up the alfalfa stand, and my mechanic torched the worn-out old welded on skid shoe off.  I stated I would get the parts and install them on the swather.  When I attempted to do this I found a worn-out wear plate prohibited installation of the new skid shoe.  The swather can only be fitted with a wear-plate or skid shoe.  This swather has both which is akin to putting new batteries in a flashlight without first removing the old batteries.  This required me to get under the header and cut-out the old wear plate with a hammer and chisel.  Such labor at age 77 is far beyond the pale of anything I choose to do.  The previous owner made this modification, along with the left home-made crop divider and auger clutch tightener which should have been replaced with manufactured parts before sale.  On 8 September, Saturday night at 19:00 hours, I requested that Lott Implement open his store and provide me with an auger clutch assembly.  This was installed on Sunday morning.  Monday morning the swather lost all hydraulic fluid since the Salina Straub mechanic failed to properly install the hydraulic filter seal.  These numerous break downs and repairs caused me to complete putting up my prairie hay the middle of October rather than the last week of

6

August which is my usual practice.  No farmer buys equipment unless it is Field Ready, and I certainly would not for I have no means to rebuild used equipment.  This swather should never have been sold.  The attitudes and performance of the employees at Straub Great Bend and Salina were similar, evidencing that Ron Straub, owner and president, not only had set policy contrary to good business practices and techniques, but had implemented policy to cheat consumers for the unjust enrichment of Straub.

21.  Rather than attempt to appraise the loss of crop value, my work, extensive time lost due to breakdowns and traveling excessive miles to obtain repairs, the plaintiff requests that this Honorable Court award him compensatory damages and levy penalties pursuant to K.S.A. 50-636 (a) and (d) for each violation.

22.  The costs are computed to be $2,774.64 plus other unlisted compensatory and unspecified incidental damages.  I request the court award me twice the amount of my costs along with other expenses pursuant to K.S.A. 50-6,101.

23.  Straubs attempt to modify, and/or limit the implied warranty of merchantability, as defined in K.S.A. 84-2-314, by warranting the swather "as is" clause in the contract is void by the operation of law.  The Plaintiff requests that the court award him $10,000 pursuant to K.S.A. 50-636 and K.S.A. 50-639.

24.  At age 79 I am an elder person as defined by K.S.A. 50-676 (a).  The Court should impose an additional civil penalty of $10,000 pursuant to K.S.A. 50-676 through K.S.A. 50-679.

25.  Straub Great Bend and Salina conspired with reckless indifference to cheat the Plaintiff and avoid all responsibility for having taken his money and only supplied him with a piece of junk equipment.  This reckless and intentionally malicious misconduct by Straub evidences bad motive, and requires the award of punitive damages according to K.S.A. 50-679.

## COUNT II:  VIOLATION OF 18 USC §1962 (c.)

26.  The Plaintiff realleges the allegations set forth in Count I.

27.  Messers. Scott Dewerff and Ron Straub conducted their business of Straub International, an enterterprise, through a pattern of racketeering activity.  The Plaintiff bought an 8450 Hesston swather from Straub based on the oral promise by Scott Dewerff that the swather was Field Ready. On 9 May 2007 the swather was delivered to his farm in Republic County KS., and he paid by check. This check was processed by mail and wire (18 USC §1341 and 18 USC §1343) through the Federal Reserve System.  This accounted for Predicate Acts No's 1 and 2.  The contract contained the phrase that the swather was sold "as is", contradicting the promise made by Mr. Dewerff. Subsequently the Plaintiff received additional information concerning the sale from Mr. Dewerff mailed 9 May '07.  (Exh. 16).  This is Predicate Act No. 3.

28.  The contract excluded the implied warranty of merchantability and fitness for a particular purpose, and in so doing abrogated the Kansas Consumer Protection Act.  Such a disclaimer is void by the operation of Law.  K.S.A 50-639(e).  The scheme was to make false promises and consummate sales contracts under false pretenses which would in turn be annulled by the written contract for Straubs unjust enrichment.  This device has been used by Straub throughout its six locations to cheat customers out of millions of dollars since the passage of the Kansas Consumers Protection Act in 1973.  The scheme devised by Ron Straub and other non-defendant co-conspirators spawned the following numerous Predicate Acts listed pursuant to 18 USC §1343:

### Telephone Calls – Predicate Acts No.'s 4 thru 22

4.  4/30/07 – Dewerff (Great Bend)

5.  5/01/07 – Dewerff (Great Bend)

6.  5/01/07 – Dewerff (Great Bend)

7.  5/04/07 – Dewerff (Great Bend)

8.  5/05/07 – Dewerff (Great Bend)

9.  5/07/07 – Dewerff (Great Bend)

10.  5/08/07 – Dewerff (Great Bend)

11.  5/09/07 – Dewerff (Great Bend)

12.  5/17/07 – Dewerff (Great Bend)

13.  6/06/07 – Straub (Salina)

14.  6/07/07 – Straub (Salina)

15.  6/18/07 – Straub (Salina)

16.  6/18/07 – Straub (Salina)

17.  6/27/07 – Straub (Salina)

18.  6/30/07 – Straub (Salina)

19.  7/17/07 – Straub (Salina)

20.  7/20/07 – Straub (Salina)

21.  7/20/07 – Dewerff

22.  7/23/07 – Dewerff

All telephone calls were used to further the scheme to defraud and are verifiable by telephone
records. Letters to the Kansas Attorney General resulted in numerous Predicate Acts of Mail Fraud
(18 USA §1341), two of which are listed in Exh. 17. These Predicate Acts all occurred within the time
period covered by the RICO statute of limitations and 18 USC §1961 (5), and therefore establish a
pattern of racketeering activity during the time frame from 31 Apr '07 to 3 Nov 'o8 when the Attorney
General completed his investigation.

29.  Scott Dewerff fraudulently modified the contract of sale after the contract had been
consummated and signed by both parties. All writing on a contract must be printed or typed prior to
signing. Any changes after signing made in handwriting must be initialed by both parties and dated.
Only the maker of the contract can sign in the signature block. After the Plaintiff signed the contract
with only his own name and paid with a check, Scott Dewerff changed the signature block to read
"Edna Cory Investments Inc." The attempt to forge a name in the signature block is unlawful. Only

9

the Plaintiff has the authority to commit the corporation to a contract.  Similarly this check was endorsed by the plaintiff only with his name.  The endorsement did not carry the name of Edna Cory Investments, Inc, and, therefore, Edna Cory Investments, Inc., was not a party to the check.  There are only two parties to a check.  One party appears after the words "pay to the order of", and the second party is the endorser.  Edna Cory Investments was not a party to the contract or to the check. The swather was bought and paid for by the Plaintiff as an individual person.

30. Straub continued in its attempt to make the contract and check a corporate sale to circumvent the Kansas Consumer Protection Act.  Straub sent a bill dated 23 August '07 to Edna Cory for work that Straub had agreed to pay itself.  (Exh 13)  This attempt was futile.  Edna Cory died 23 April '95 and could not have agreed to pay for any swather or service.

### COUNT III:  VIOLATION OF 18 USC §1962 (d)

31.  The Plaintiff realleges the allegations set forth in Counts I and II.

32.  Defendants Dewerff, R. Straub, and Straub International conspired among themselves and with non-defendant co-conspirators to defraud the Plaintiff by furnishing him an unmerchantable swather, and continued refusal to adhere to the Kansas Consumer Protection Act and circumvent statutory requirements.  The Defendants agreed to devise the scheme to defraud buyers of their used equipment for their own benefit and unjust enrichment.  Each Defendant conceived and/or implemented the scheme to defraud and each Defendant caused the U.S. Mail and Wire to be used in carrying out the scheme, and to operate Straub International as a racketeering enterprise in violation of 18 USA §1962 (d).  Fraudulently obtained money (18 USC §2314) used for the furtherance of the Defendants business affected interstate commerce.

The swather has continued to break down with repair costs exceeding those of the first year of operation.

10

## COUNT IV: VIOLATION OF 18 U.S.C. §1962 (C)

33. The Plaintiff realleges the allegations set forth in Counts I, II, III.

34. Kim W. Cudnay is sued in her personal capacity as an individual only.

35. The Republic County District Court did not have jurisdiction to require or accept a supersedes bond. The case was docketed in the Kansas Court of Appeals 22 March 2011, and jurisdiction passed to the Court of Appeals at that time for the case in its entirety.

36. Specific jurisdiction for posting of a supersedes bond also passed on 22 March 2011 pursuant to K.S.A. 60.2013 (e): "After the action is so docketed, application for leave to file a bond may be made only in the appellate court".

37. The Defendants mailed a Motion for a Hearing in Aid of Execution on 7 July 2011. (Exh18.) Transcript of Hearing held 8 August 2011. (Exh.19). The Plaintiff was coerced into paying the court money to prevent his property from being seized. He knew the court fully intended to dispose of his money at the time.

38. There was never any basis for sanctions. K.S.A. 60-2011 (b) provides for sanctions only in regard to papers being filed in the court which has jurisdiction of the case. The award of sanctions could be based only on pleadings filed in the Republic Count District Court, K.S.A. 60-211 (a) and these papers must violate paragraph (b). Journal Entry dated 28 Feb 2011 Par 7, (Exh.20) states "...Defendants further assert that Plaintiff had the opinion of the Kansas Attorney General that his consumer protection claim was without merit. Finally, Defendants assert that Plaintiff made 3 prior unsuccessful attempts to assert RICO claims in state or federal courts. For these reasons, Defendants seek attorney fees under K.S.A. 60-211". None of the foregoing papers were filed in her court. The investigative report of the Consumer Protection Division is an administrative action and not the Opinion of the Attorney General.

11

The referenced advisement stated "You may always consult with a private attorney, our decision in no way limits your ability to pursue claims with your own attorney". The Republic County District Courts award of sanctions failed to meet statutory requirements and is without any force or effect, and is void.

39. Further Judge Cudnay acted without jurisdiction and, therefore, in her own personal capacity, waiving all immunity. Once immunity is waived, it is waived in its entirety for all proceedings. Presumably, Cudnay disposed of the Plaintiffs bond for $9,869.53 by providing the money to the Defendants sometime after 6 January 2012. Cudnay acted in her personal capacity and simply stole $9,869.53 from the Plaintiff since she was without authority to demand money from the Plaintiff or dispose of any money deposited in Trust to the Court.

40. The Plaintiff proved that the swather was unmerchantable and dangerous. When the swather began turning in small circles and was uncontrollable, the Plaintiff called Straub who hauled the swather to Straub Salina. The repair bill listed: "remove all steering linkage and inspect for needed repair. Order needed parts for steering and assemble. Install steering linkage back onto the swather and adjust", The foregoing repair proved a violation of K.S.A. 50-626, 627, and state and federal safety laws. Judge Cudnay's acceptance in the Journal Entry, Par 7. (Exh 20) that the Plaintiff claims are without merit are her determination. No reasonable person could have made such a blatantly false statement, and yet she used this same paragraph to award sanctions. Judge Cudnay has failed to provide justice pursuant to the Report of Supreme Court Standards Committee (KS Court Rules and Procedures p. 578) and should be removed in accordance with (1) (B). Once Judge Cudnay began prosecuting the Plaintiff, she not only failed to act in her capacity as judge but rather acted as the representative of the Defendants, and as such is liable for all damages assessed the Defendants.

41. The Defendants mailed a Motion for Summary Judgment on 23

12

November 2010 which contained the Factual Statements listed in Exh 21. Factual Statement No. 1 stated "On May 9, 2007, the Plaintiff (Cory) purchased a used 8450 Hesston swather from Straub International (Straub."...The Summary Judgment did not contain any statement reference that the Plaintiffs Corporation bought the swather. Journal Entry of 1 Feb 2011 granted the Defendants Motion for Summary Judgment. (Exh 22) The same Journal Entry, No. stated "The transaction between Mr. Cory and the defendants was actually through a corporation and said corporation is not entitled to the protection of the Consumer Protection Act." Such a statement was not submitted for rebuttal in the Summary Judgment which would certainly prohibit summary judgment.

42. The Plaintiff was well aware Judge Cudnay was going to grant summary judgment to the Defendants. In his Motion in Opposition he presented argument that he bought the swather and not a corporation. Who bought the swather is a factual question and must be determined by jury, prohibiting the granting of summary judgment by a judge. The Summary Judgment was void at the time of writing.

43. Judge Cudnay and Berecheidt conducted their business in the Republic County District Court, an enterprise, through a pattern of racketeering activity. Upon his initial entry into the court, the Plaintiff knew he was in a hostile environment. Judge Cudnay immediately began to prosecute the Plaintiff obstensively for merely entering her court. The scheme was simply to eradicate the Plaintiffs case by deciding every motion in favor of the Defendants, regardless of its legal validity, and render judgment in their favor. Cudnay and Berscheidt spawned numerous Predicate Acts pursuant to 18 U.S.C. §1341 and 18 U.S.C. §1343. Two major predicate acts were the Journal Entries, Exh,s 20 and 22, and all other papers sent through the U.S. Mail by the court, the Defendants, and the Plaintiff.

## Count V: Violation of 18 U.S.C. §1962 (d)

44. The Plaintiff realleges the allegations set forth in Counts I, II, III, & IV.

13

45. The Defendants Berscheidt and Cudnay conspired among themselves and with non-defendant co-conspirators, Kansas Court of Appeals and Kansas Supreme Court, to conceal and cover-up the facts in the record, and misuse Kansas Laws to deprive the Plaintiff his right to Due Process accorded by the Privileges or Immunities, and The Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States.

46. Berscheidt made a request by motion and Cudnay entered his request as a judgment. The example presented w/Berscheidts ill-conceived request for sanctions. Bershiedt requested summary judgment and Cudnay granted the judgment. The summary judgment was fraught with error which the Plaintiff refuted, and pointed out that the summary judgment failed to meet the Standards for summary judgment. At one point Berscheidt had stated to Judge Cudnay that the Plaintiffs RICO claim failed for lack of pleading a violation of a Kansas statute The Plaintiff had refuted the statement but it still appeared in the journal Entry 28 Feb. 2011. Par 6 (Exh. 20) The Kansas Court of Appeals addressed the issue in the first paragraph, p. 8 of its opinion. (Exh. 23) Par 3, p9 the court refers to Joseph and a specific intent to defraud, Neither the wire or mail fraud statutes has such a requirement. It appears to the Plaintiff that Joseph is some kind of basic primer which is flawed beyond all use. Now the court states that a RICO pleading must satisfy the particularity requirements of K.S.A. 60-209(b)). Kansas law has nothing to do with the RICO statutes. The U.S. Supreme Court has stated on several occasions that the courts cannot modify RICO as only Congress has that authority. The Kansas Court of Appeals is not much better off than the lower court.

47. The Court of Appeals should have reversed the lower court and started proceedings for removal. Decisions such as this one only place the entire Kansas Judicial System on Trial.

48. The Plaintiff petitioned the Kansas Supreme Court for review, and requested an extension of time since the Clerk of Court failed to Notice two (2) changes of

14

address on file. A 20-day extension of time is freely granted by the clerk. Upon
information and belief, the Supreme Court removed the authority from the clerk in
this case to grant an extension of time. The court refused to grant the extension
of time to allow timely filing due to sending the Opinion to the wrong state,
requiring forwarding. However the court neglected to inform the Plaintiff and he
was required to file 16 copies of the review to be timely. The Supreme Court of
Kansas has spawned a corrupt judicial system for the State of Kansas.

## Count VI: Damages

49. The Defendants and their non-defendant co-conspirators, Kansas Court
of Appeals and Supreme Court of Kansas, left the Plaintiff no choice but to enter a
court of competent jurisdiction to obtain remedy and relief from their fraudulent
and unlawful actions in the Kansas State courts. The Defendants conspired with
reckless indifference to cheat the Plaintiff, and to conceal and cover-up their acts
by rendering a false and fraudulent judgment for sanctions. Judge Cudnay
rendered Journal Entries (Exh's 20 & 22) which were intended to make all actions
taken by the court appear to be legal and proper. This reckless and intentionally
malicious misconduct by the defendants evidences bad motive, and requires the
award of punitive damages. The Plaintiffs Claim for Compensatory damages
states a claim upon which belief can be granted, and his claim for punitive
damages should be awarded.

WHEREFORE, for the aforementioned reasons, the Plaintiff moves this
Honorable Court for declaratory, injunctive, and monetary relief, and to enter
judgment, jointly and severally against each Defendant for the sum of one
hundred thousand dollars ($100,000.00) actual and compensatory damages; five
hundred thousand dollars ($500,000.00) in punitive damages against the
Defendants collectively; one million dollars ($1,000,000.00) in punitive damages
from Defendant Cudnay, the Principal Actor, and to enjoin her from further

15

participation in the affairs of the Republic County District Court, or similar enterprise, pursuant to 18 U.S.C. 1964 (a). FURTHER, to enter Treble Damages pursuant to 18 U.S.C. 1964 (c); to enter costs of this action, and for such other and further relief as this Honorable Court deems necessary and proper for the Protection of the Public. The Kansas State Court case will be entered on facebook.

Wichita is hereby designated as the place for trial.

TRIAL BY JURY IS DEMANDED.

By _Bill J. Cory_

Bill J. Cory, Pro Se
529 West Eighteenth Street
Concordia, Kansas 66901
(785) 243-7125

_7_ August 2012

16

# CNH AMERICA LLC                **Purchaser's Order for Case Equipment**

Date __5-9__ , 20 _0 7_

To _Straug International_ _____ Dealer

Address _P.O. Drawer 1606_  _Great Bend, KS 67530_

Please Enter the Following order to be delivered on or after _____

| New | Used | Demo | Warranty Period months | Make, Model Description | Serial No./Attach. | Cash Price Each Item |
|-----|------|------|------------------------|------------------------|--------------------|----------------------|
|     | X    |      |                        | 8450 Heston            | #72344             | $ 34 900 00          |
|     |      |      |                        |                        |                    | $                    |
|     |      |      |                        |                        |                    |                      |
|     |      |      |                        |                        |                    |                      |
|     |      |      |                        |                        |                    |                      |
|     |      |      |                        |                        | **Transportation Expense** |                |

**Trade in:** Plus Extra equipment (Cab, Extendahoe, Duals, etc.)

| Year Mfg. | Make | Description Model Serial No. | Impl. Size | G A S I | D S L | Hours | Trade Allowance |
|-----------|------|------------------------------|------------|---------|-------|-------|-----------------|
|           | Hesta | 8100                        |            |         |       |       | 14 900 00       |
|           |      |                              |            |         |       |       |                 |
|           |      |                              |            |         |       |       |                 |

Purchaser hereby bargains, sells and conveys unto Seller the above described Trade-In Equipment and warrants and certifies it to be free and clear of liens, encumbrance, and security interests, except to the extent shown below.

Upon delivery, it is agreed that Purchaser will pay all taxes and other charges and settle for the purchase price as follows:

1. Trade Allowance Owed               $ _14,900 00_
2. Less Amount Owed
   To _____            $ _____
3. Net Trade Allowance, (1 - 2)       $ _____
4. Other (Specify) _____        $ _____
5. Cash Down Payment with Order       $ _____
6. Total Cash and Other Down Payment (4 + 5)   $ _____
7. Total Down Payment (3 + 6)         $ _14,900_

1. Total Cash Price                   $ _34 900 00_
2. Less Down Payment                  $ _14 900 00_
3. Unpaid Cash Price                  $ _____
4. Enter _____% Sales Tax $ _____   $ _____
5. Other Fees or Charges $ _____
6. Total Taxes and Fees (4 + 5)       $ _____
7. Cash Due on Delivery (3 + 6)       $ _20000 00_

This is a cash transaction. If the Purchaser so requests prior to acceptance, the unpaid balance will be handled as a time sales transaction, subject to available financing and credit approval.

**NO DELIVERY OF ABOVE GOODS TO BE MADE UNTIL FULL SETTLEMENT IS RECEIVED.**

**SELLER AND MANUFACTURER MAKE NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED (INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS) EXCEPT AS PROVIDED ON THE REVERSE SIDE.**

**NOTICE TO PURCHASER**

1. Read this contract before you sign it.
2. You are entitled to an exact and completely filled in copy of this contract when you sign it. Keep it to protect your legal rights.
3. Purchaser acknowledges receipt of a fully completed copy of this contract and Purchaser waives notice of the acceptance or rejection of this order by the seller.
4. The additional terms and conditions set forth on the reverse side are a part of this contract and are incorporated herein by reference.

**It is understood that this is the entire agreement between the parties.**

Order taken by _____

Order accepted this _9th_ _____ day

of _May_ _____, 20 __

_____
Dealer/Store Manager

_Ethan Cory Investments_
_Ross Cory_
(Purchaser's Signature)

Purchaser Address _529 W 19th_
(Street)

_Concordia_
(Town)

_K___  _66901_
County    State    Zip Code

_5x2 A, P1_

Form No. 1643  3/04(Dealer)  Printed in U.S.A.

# ADDITIONAL TERMS AND CONDITIONS

1. When trade-in equipment is not to be delivered to the Seller until delivery of the equipment purchased by this order, the trade-in equipment may be reappraised at that time and such reappraisal value shall determine the allowance made for such trade-in equipment. When the reappraised value is less than the original trade-in allowance shown on this form, the purchaser may terminate this order; however, this right of termination must be exercised prior to delivery of the equipment by Seller and surrender of the trade-in equipment to Seller.

2. In the event Case dealer's price is charged prior to delivery, the purchase price shall be adjusted accordingly. If such price change results in an increase, purchaser has the option of cancelling this order in writing immediately on being notified thereof.

The Seller assumes no liability for nonshipment, delay in shipment or other circumstances beyond its control.

# WARRANTY

## NEW EQUIPMENT

Any warranties provided by the Dealer on any NEW EQUIPMENT set forth on the reverse side hereof shall be given to Purchaser by separate statement, the receipt whereof is hereby acknowledged by Purchaser.

## USED EQUIPMENT

USED EQUIPMENT covered by this Purchase Order is sold AS IS, WHERE IS, WITH NO REPRESENTATIONS OR WARRANTIES, unless otherwise specified in writing.

# ASSIGNMENT

The within contract, together with the indebtedness and all rights therein described, is hereby assigned, transferred, conveyed and set over unto CASE CREDIT CORPORATION ("CASE CREDIT") and/or CNH AMERICA LLC for its successors or assigns, for its or their own use forever, with full power and authority with regard thereto, subject nevertheless to the conditions therein   contained and to the right therein granted according to law and each assignor represents and warrants the said instrument as genuine and in all respects what it purports to be and has no knowledge of any fact impairing the validity thereof, and that there are no set-offs or counterclaims against the same. Payment of the within contract according to its terms hereby guaranteed by the undersigned.

(Seller)

By_____

Dated_____

Exh A , P 2



**CARQUEST**®
**AUTO PARTS**

YOU'LL FIND IT AT CARQUEST™

CQ OF CONCORDIA KS # 1960
1615 LINCOLN AVE
CONCORDIA, KS  66901
(785)243-2144
SERVING A WORLD IN MOTION!!!

PAGE      1
REF#   43895

2729-36578

600014

ANY PART RETURNED FOR CREDIT MUST BE ACCOMPANIED BY THIS RECEIPT.     SEE CARQUEST STORE FOR DETAILS OF THIS COAST TO COAST GUARANTEE.

REPUBLICAN VALLEY FARMS
638 E14TH
CONCORDIA, KS  66801

REPUBLICAN VALLEY FARMS
638 E14TH
CONCORDIA, KS  66801

| INVOICE NO. | CUSTOMER NO. | DATE | CUST. P.O. NO. | SALES NO. | CNTR. NO. | SHIP VIA | TERMS |
|---|---|---|---|---|---|---|---|
| 2729-36578 | 600014 | 05/23/07 | | | RW11 | | CREDIT C |

| MFG. PART NUMBER | ORDERED | SHIPPED | BKO | LIST PRICE | NET | NET CORE | EXT. AMOUNT | TAX |
|---|---|---|---|---|---|---|---|---|
| CFI 85478 HD OIL FILTER | 1 | 1BO | | 23.09 | 9.22 | 0.00 | 9.22 | N/N |
| | | SPECIAL ORDER (BO) | | | | | | |
| CFI 85759 HD OIL FILTERS | 1 | 1 | | 28.28 | 10.77 | 0.00 | 10.77 | N/N |
| CFI 85307 OIL FILTER | 1 | 1 | | 11.62 | 5.04 | 0.00 | 5.04 | N/N |
| CFI 86166 FUEL FILTER | 2 | 2RT | | -13.35 | -5.09 | 0.00 | -10.18 | N/N |
| | | RESELLABLE RETURN ORIG INV 27466 | | | | | | |
| | | | | | | | 25.03 | |

WARRANTY DISCLAIMER: "The factory warranty constitutes all of the warranties with respect to the sale of all items. The seller hereby expressly disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of all items."

| FREIGHT | LABOR | SHOP | TOTAL CORE | TAXABLE AMT. | SALES TAX | | SUB TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | 0.00 | 0.00 | | 14.85 |

RECEIVED BY  X          14.85

LIST TOTAL ▶     36.29     PAY THIS AMOUNT ▶     14.85
CRED

02:42 PM

---

Bill To
BILL CORY
529 W 18TH
CONCORDIA KS 66901

**DALE S REPAIR**
507 RAILROAD ST
AGENDA, KS 66930

Invoice #      11074

Date      5/23/2007

Project

| Item | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| 49 R 134 LB | FREON | 1 | 14.50 | 14.50 |
| TRIP | TRIP & LABOR | 1 | 50.00 | 50.00 |

Subtotal   $64.50      Sales Tax (7.3%)   $0.00      Total   $64.50

Exh. 1



**WAYNE REPAIR**

MARVIN CHERNEY

Phone 785-732-6677

Randolf Wayne St.

Agenda, KS 66930

Customer's Order No. _____ Phone No. _____ Date 5-31-07

Name _Bill Cory_

Address _SWATHER_

| SOLD BY | CASH | C.O.D. | CHARGE | ON ACCT. | MDSE. RETD. | PAID OUT. |
|---------|------|--------|--------|----------|-------------|-----------|

| QUAN. | DESCRIPTION | | PRICE | AMOUNT | |
|-------|-------------|--|-------|--------|--|
| 1 | ZERK | | 0 | 95 | |
| 1 | Bag | | | 10 00 | |
| | labor on swather | | | | |
| | air Done | | 17 | 150 00 | |
| | Kyle | | 4 | 20 00 | |
| | | | | 210 95 | |
| | | TAX | | 15 82 | |
| | | TOTAL | | 226 77 | |

All claims and returned goods MUST be accompanied by this bill.

0001080   Rec'd by _____

Thank You

GS-234-3   PRINTED IN U.S.A.

Hydraulic oil: $774.30

oil

**WAL★MART**

ALWAYS LOW PRICES

_Always_

S U P E R C E N T E R

WE SELL FOR LESS

MANAGER ROY REIF

( 785 ) 243 - 2602

ST# 1282 OP# 00000747 TE# 13 TR# 07329

| FARM OIL | 007874213211 | 14.86 0 |
| THINNER | 003019294400 | 5.47 0 |
| 2YCLE OIL | 007874201579 | 0.97 0 |
| 2YCLE OIL | 007874201579 | 0.97 0 |
| 2YCLE OIL | 007874201579 | 0.97 0 |
| 2YCLE OIL | 007874201579 | 0.97 0 |
| 2YCLE OIL | 007874201579 | 0.97 0 |

SUBTOTAL   25.18

TOTAL   25.18

MCARD TEND   25.18

ACCOUNT #0052

APPROVAL #635353

TRANS ID -

VALIDATION -

PAYMENT SERVICE - A

CHANGE DUE   0.00

**# ITEMS SOLD 7**

TC# 3377 5768 9097 0119 8947

New! Olay Definity UV Foam & Cleansers

05/29/07   10:47:10

***CUSTOMER COPY***

**MART**

PRICES

S U P E R C E N T E R

WE SELL FOR LESS

MANAGER ROY REIF

( 785 ) 243 - 2602

ST# 1282 OP# 00000004 TE# 13 TR# 08299

| FARM OIL | 007874213211 | 14.86 0 |
| FARM OIL | 007874213211 | 14.86 0 |
| FARM OIL | 007874213211 | 14.86 0 |
| FARM OIL | 007874213211 | 14.86 0 |

SUBTOTAL   59.44

TOTAL   59.44

MCARD TEND   59.44

ACCOUNT #0052

APPROVAL #699550

TRANS ID -

VALIDATION -

PAYMENT SERVICE - A

CHANGE DUE   0.00

**# ITEMS SOLD 4**

TC# 7610 8714 6964 5090 2674

New! Olay Definity UV Foam & Cleansers

05/31/07   09:50:35

***CUSTOMER COPY***

Exh 2

**Great Plains** 
**Sunflower**
**CrustBuster** SOLD TO

# LOTT IMPLEMENT, INC.

**Sales**    **Service**



P.O. Box 191   311 N. Rock St.   MINNEAPOLIS, KANSAS 67467
PHONE: 785-392-3110  ●  FAX: 785-392-3314

|  | PAGE |
|---|---|
|  | 1 |

| CASH | CHG. | F.P. |
|---|---|---|
|  | C |  |

BILL CORY
529 W. 18TH ST.
CONCORDIA KS 66901

ACCT. NO.
07125

| SALESMAN | PURCHASE ORDER NO. | R.O.NO. | PL# |  | INVOICE DATE | TIME | INVOICE NO. |
|---|---|---|---|---|---|---|---|
| REX |  |  | 108509 |  | 07/25/2007 | 05:32 PM | 7504 |

| QUANTITIES | | | PART NUMBER | DESCRIPTION | VENDOR BIN LOC. | PRICES | | |
|---|---|---|---|---|---|---|---|---|
| ORDERED | B/O | SHIPPED | ✓ | | | | | |
| 1 | 0 | 1 | N700115322 | SHOE/SKID | BB415 | 80.82 | 80.82 | 80.82 |
| 1 | 0 | 1 | N700124319 | PAN/AUGER | BB415 | 31.77 | 31.77 | 31.77 |
| 1 | 0 | 1 | N55574 | BELT/V | ABU100 | 57.43 | 57.43 | 57.43 |
| 1 | 0 | 1 | N700124320 | PAN/AUGER | NW144 | 31.77 | 31.77 | 31.77 |
| 6 | 0 | 6 | NLOCKNUT | 10MM | NS | 0.72 | 0.72 | 4.32 |
| 12 | 0 | 12 | N14806AF | BOLT/CARRI | 0E926 | 0.11 | 0.11 | 1.32 |
| 14 | 0 | 14 | N5/16FW | FLATWASHER | SHOW | 0.04 | 0.04 | 0.56 |
| 14 | 0 | 14 | N70931277 | NUT/FLANGE | HDWE BIN | 0.74 | 0.74 | 10.36 |
| 2 | 0 | 2 | N7883325 | SCREW/MACH | HDWE BIN | 0.17 | 0.17 | 0.34 |

SET OUTSIDE FOR CUSTOMER PU

IF YOU CHOOSE TO KEEP QUIET,
YOU STILL HAVE YOUR OPTIONS.

| | DESCRIPTION | ACCOUNT | AMOUNT |
|---|---|---|---|
| PARTS | TAXABLE |  | 0.00 |
| | NONTAXABLE |  | 218.69 |
| FREIGHT | |  | 0.00 |
| LABOR | HOURS | 0.00 | 0.00 |
| SALES TAX | |  | 0.00 |

SHIP
VIA

TERMS: Account due 10th of month following purchase. Service charge 1½% per month (18% annual) on unpaid balance.
This purchase is subject to the terms of Lott Implement Inc.
No returns after 7 days.
No return without sales receipt.
15% restocking charge on return items.
               Thank You.
For Farm Use Only.    Received By _____

**PLEASE PAY THIS TOTAL** ▶   218.69

Exh 3



# BRUNA IMPLEMENT COMPANY

P.O. Box 390
Marysville, KS 66508
Voice: 1-785-562-5304
FAX: 1-785-562-2561

P.O. Box 162
Washington, KS 66968
Voice: 1-785-325-2232
FAX: 1-785-325-2162

1798 18th Rd.
Clay Center, KS 67432
Voice: 1-785-632-5621
FAX: 1-785-632-2564



CASHC CASH SALE THANK YOU



| PARTS COUNTER | | | | |
|---|---|---|---|---|
| N | 1 CAS 700110222 | PIN | 18.73 | 18.73 | 18.73 |
| N | 1 CAS 700110220 | SUPPORT WA | 113.89 | 113.89 | 113.89 |
| | | ** TOTAL PARTS COUNTER | | | 132.62 |

---



# LOTT IMPLEMENT, INC.

**Great Plains**
**Sunflower**
**CrustBuster** SOLD TO

Sales     Service

P.O. Box 191   311 N. Rock St.   MINNEAPOLIS, KANSAS 67467
PHONE: 785-392-3110  •  FAX: 785-392-3314

BILL CORY
529 W. 18TH ST.
CONCORDIA KS 66901

PAGE 1

| CASH | CHG. | F.P. |
|---|---|---|
| | M | |

ACCT. NO.
07125

| SALESMAN | PURCHASE ORDER NO. | R.O.NO. | PL# | INVOICE DATE | TIME | INVOICE NO. |
|---|---|---|---|---|---|---|
| REX | | | 108870 | 08/06/2007 | 01:10 PM | 7787 |

| QUANTITIES | | | PART NUMBER | DESCRIPTION | VENDOR BIN LOC. | PRICES | | |
|---|---|---|---|---|---|---|---|---|
| ORDERED | B/O | SHIPPED | | | | | | |
| 6 | 0 | 6 | N6453799 | CLIP/SKID | 0U412 | 2.39 | 2.39 | 14.34 |
| 1 | 0 | 1 | N700110222 | PIN | 0V301 | 24.87 | 24.87 | 24.87 |
| 4 | 0 | 4 | N10P | HAIRPIN | NS | 0.25 | 0.25 | 1.00 |
| 4 | 0 | 4 | N3/8X11/4NCP | PLOW BOLT | SHOW | 0.44 | 0.44 | 1.76 |
| 4 | 0 | 4 | N3/8FW8 | F/WASHER | SHOW | 0.20 | 0.20 | 0.80 |
| 4 | 0 | 4 | N3/8LW | LOCKWASHER | SHOW | 0.06 | 0.06 | 0.24 |
| 4 | 0 | 4 | N3/8NC | NUT/COARSE | SHOW | 0.06 | 0.06 | 0.24 |

43.25

Exh 2

B. Terin

# WAL★MART

ALWAYS LOW PRICES.

*Always* 113.44

```
S U P E R C E N T E R
WE SELL FOR LESS
MANAGER ROY REIF
( 785 ) 243 - 2602
ST# 1282 OP# 00000451 TE# 14 TR# 04983
MUST POT SAL 068113191685 F      2.98 T
COOKED HAM   020527820383 F      3.83 T
ROAST BEEF   020804340518 F      5.18 T
                 SUBTOTAL        11.99
BATT 48-3      068113192549     56.72 0
BATT CORE FE 068113107867        9.00 0
BATT 48-3      068113192549     56.72 0
BATT CORE FE 068113107867        9.00 0
UNIVER 30      007874213212     14.52 0
UNIVER 30      007874213212     14.52 0
UNIVER 30      007874213212     14.52 0
UNIVER 30      007874213212     14.52 0
UNIVER 30      007874213212     14.52 0
FARM OIL       007874213205     14.97 0
FARM OIL       007874213205     14.97 0
                 SUBTOTAL       245.97
         TAX 1   7.300 %          0.88
                    TOTAL       246.85
                MCARD TENN      246.85
```

Bill To
BILL CORY
529 W 18TH
CONCORDIA KS 66901

**DALE S REPAIR**
507 RAILROAD ST
AGENDA, KS 66930

Date 8/15/2007

Invoice # 11261

Project

| Item | Description | Qty | Rate | Serviced | Amount |
|------|-------------|-----|------|----------|--------|
| TRIP | TRIP & LABOR ON SWATHER | 4 | 50.00 | | 200.00 |

FARM REPAIR

Subtotal   $200.00   Sales Tax...   $0.00   **Total**   $200.00

Exh 5

 Great Plains
Sunflower
CrustBuster SOLD TO

## LOTT IMPLEMENT, INC.

Sales  Service

 AGCO ALLIS
Outdoor Power Equipment

 GLEANER

 HESSTON
THE PRIME LINE

P.O. Box 191   311 N. Rock St.   MINNEAPOLIS, KANSAS 67467
PHONE: 785-392-3110  •  FAX: 785-392-3314

BILL CORY
529 W. 18TH ST.
CONCORDIA KS 66901

PAGE
1

| CASH | CHG. | F.P. |
|---|---|---|
| | M | |

ACCT. NO.
07125

| SALESMAN | PURCHASE ORDER NO. | R.O.NO. | PL# | INVOICE DATE | TIME | INVOICE |
|---|---|---|---|---|---|---|
| JL | | | 109934 | 09/08/2007 | 07:37 PM | NO.   8818 |

| QUANTITIES | | | PART NUMBER | DESCRIPTION | VENDOR | PRICES | | |
|---|---|---|---|---|---|---|---|---|
| ORDERED | B/O | SHIPPED | ✓ | | | BIN LOC. | | | |

| ORDERED | B/O | SHIPPED | | PART NUMBER | DESCRIPTION | VENDOR / BIN LOC. | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4 | 0 | 4 | N | 58644 | SPRING | 0U401 | 2.06 | 2.06 | 8.24 |
| 1 | 0 | 1 | N | 700121425 | DISC | 0V603 | 13.83 | 13.83 | 13.83 |
| 2 | 0 | 2 | N | 700711024 | DISC/FRICT | 0V307 | 21.85 | 21.85 | 43.70 |
| 1 | 0 | 1 | N | 700121423 | HUB/ASM | 0V603 | 127.53 | 127.53 | 127.53 |
| 1 | 0 | 1 | N | 700121427 | SPROCKET/A | 0V603 | 132.71 | 132.71 | 132.71 |

9 Sept '07

2 hr. put clutch on
Header $40 a hr, $80 total

Joe Clott

| XXXXXXX0052 | EXP: XX/X: |
|---|---|
| ...ON | ACCOUNT | AMOUNT |
| ...XABLE | | 0.0 |
| ...NTAXABLE | | 326.0 |
| | | 0.0 |
| HOURS | 0.00 | 0.0 |
| | | 0.0 |
| AY THIS TOTAL ▶ | | 326.0 |

Exh 6

at Plains
Sunflower
**CrustBuster** SOLD TO

# LOTT IMPLEMENT, INC.

**Sales**  AGCO ALLIS   **Service**

P.O. Box 191   311 N. Rock St.   MINNEAPOLIS, KANSAS 67467
PHONE: 785-392-3110 ● FAX: 785-392-3314


AGCO ALLIS Outdoor Power Equipment   GLEANER   HESSTON THE PRIME LINE

| SOLD TO | | PAGE | | | |
|---------|---|------|---|---|---|
| BILL CORY | | 1 | | | |
| 529 W. 18TH ST. | | CASH | CHG. | F.P. | |
| CONCORDIA KS 66901 | | | M | | |
| | | ACCT. NO. | | | |
| | | 07125 | | | |

| SALESMAN | PURCHASE ORDER NO. | R.O.NO. | PL# | INVOICE DATE | TIME | INVOICE | |
|----------|--------------------|---------|------|--------------|------|---------|---|
| REX | | | 110033 | 09/12/2007 | 04:40 PM | NO. | 8901 |

| QUANTITIES | | | | PART NUMBER | DESCRIPTION | VENDOR | PRICES | | |
|---|---|---|---|---|---|---|---|---|---|
| ORDERED | B/O | SHIPPED | ✓ | | | BIN LOC. | | | |
| 4 | 0 | 4 | | N47142 | SPROCKET | 0U500 | 25.64 | 25.64 | 102.56 |
| 2 | 0 | 2 | | N850643M1 | RING | 0C513 | 1.65 | 1.65 | 3.30 |
| 2 | 0 | 2 | | N700715448 | RING/RETAI | 0V309 | 1.33 | 1.33 | 2.66 |
| 2 | 0 | 2 | | N79021649 | SEALANT/RT | SHOW2 | 7.29 | 7.29 | 14.58 |
| 1 | 0 | 1 | | N700723795 | ELEMENT/FI | SHOW1 | 10.72 | 10.72 | 10.72 |

```
IF YOU WAIT UNTIL YOU'RE
REALLY SURE,YOU'LL NEVER DO IT
      AUTH: 644063
```

MC# XXXXXXXXXXXX0052   EXP: XX/XX

SHIP
VIA

TERMS: Account due 10th of month following purchase. Service charge 1½% per month
(18% annual) on unpaid balance.
This purchase is subject to the terms of Lott Implement Inc.
No returns after 7 days.
No return without sales receipt.
15% restocking charge on return items.

Thank You.

For Farm Use Only.     Received By _____

| DESCRIPTION | | ACCOUNT | AMOUNT |
|-------------|---|---------|--------|
| PARTS | TAXABLE | | 0.00 |
| | NONTAXABLE | | 133.82 |
| FREIGHT | | | 0.00 |
| LABOR | HOURS | 0.00 | 0.00 |
| SALES TAX | | | 0.00 |
| **PLEASE PAY THIS TOTAL** ▶ | | | 133.82 |

*Remove wheel Chains & Tow - Jeff & Stanley Buster - $50.00*
*Replace oil filter, wheel Chains, seal & Replace wheel*
*w/all oil - Brad & Brandon Hanson - $120.00*
*& Drive wheel*
*Sprockets*

Exh 7



**CARQUEST**
**AUTO PARTS**

YOU'LL FIND IT AT CARQUEST™

2729-43036

CO OF CONCORDIA KS # 1960
1615 LINCOLN AVE
CONCORDIA, KS 66901
(785) 243-2144
WE WELCOME YOUR COMMENTS·
CONTACT CARQUEST VOICE OF THE
CUSTOMER DEPARTMENT 877 735-2233

PAGE 1
REF# 52611

4

ANY PART RETURNED FOR CREDIT MUST BE ACCOMPANIED BY THIS RECEIPT.
SEE CARQUEST STORE FOR DETAILS OF THIS COAST TO COAST GUARANTEE.

FARM USE
WE APPRECIATE YOUR BUSINESS
KS 00000

FARM USE
WE APPRECIATE YOUR BUSINESS
ANYWHERE KS 00000

| INVOICE NO. | CUSTOMER NO. | DATE | CUST. P.O. NO. | SALES NO. | CNTR NO. | SHIP VIA | TERMS |
|---|---|---|---|---|---|---|---|
| 2729-43036 | 4 | 09-12-07 | | | 0911 | | CREDIT |

| MFG. PART NUMBER | ORDERED | SHIPPED | BKO | LIST PRICE | NET | NET CORE | EXT. AMOUNT | TAX |
|---|---|---|---|---|---|---|---|---|
| CQO CQ645-1 15W40 FLEET GAL | 13 | 13 | | 15.62 | 9.37 | 0.00 | 121.81 | N/N |
| CFI 86949 FUEL FILTER - LD | 1 | 1 | | 6.43 | 3.06 | 0.00 | 3.06 | N/N |

WARRANTY DISCLAIMER: "The factory warranty constitutes all of the warranties with respect to the sale of all items. The seller hereby expressly disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of all items."

| FREIGHT | LABOR | SHOP | TOTAL CORE | TAXABLE AMT. | SALES TAX | SUB TOTAL |
|---|---|---|---|---|---|---|
| | | | 0.00 | | 0.00 | 125.67 |

RECEIVED BY X     125.67
11:04 AM

LIST TOTAL ▶ 209.49
PAY THIS AMOUNT ▶ 125.67 CRED

---

**WAL★MART**
ALWAYS LOW PRICES. *Always.*

SUPERCENTER  274.58
WE SELL FOR LESS
MANAGER ROY REIF
( 785 ) 243 - 2602
ST# 1282 OP# 00000484 TE# 14 TR# 01029
ANTIFREEZE   068113179201   7.48 O
ANTIFREEZE   068113179201   7.48 O
FARM OIL   007874213211   14.86 O
FARM OIL   007874213211   14.86 O
FARM OIL   007874213205   14.97 O
        SUBTOTAL   59.65
        TOTAL   59.65
        MCARD TEND   59.65
ACCOUNT #0052
APPROVAL #681576   15W-293-44.58
TRANS ID -
VALIDATION -
PAYMENT SERVICE - A
        CHANGE DUE   0.00

# ITEMS SOLD 5

TC# 3647 5745 7997 0412 6937

THANK YOU FOR SHOPPING WITH US
09/11/07   18:31:03

***CUSTOMER COPY***

---

**WAL★MART**
Save money. Live better.™

SUPERCENTER
WE SELL FOR LESS
MANAGER ROY REIF
( 785 ) 243 - 2602
ST# 1282 OP# 00001879 TE# 09 TR# 05574
GEAR OIL   007450991102   8.68 O
GEAR OIL   007450991102   8.68 O
        SUBTOTAL   17.36
        TOTAL   17.36
        MCARD TEND   17.36
ACCOUNT #0052
APPROVAL #664062
TRANS ID -
VALIDATION -
PAYMENT SERVICE - A
        CHANGE DUE   0.00

# ITEMS SOLD 2

TC# 8656 3266 9639 2407 1529



THANK YOU FOR SHOPPING WITH US
09/12/07   20:50:35

***CUSTOMER COPY***



# BRUNA IMPLEMENT COMPANY          CASE ih

P.O. Box 390
Marysville, KS 66508
Voice: 1-785-562-5304
FAX: 1-785-562-2561

P.O. Box 162
Washington, KS 66968
Voice: 1-785-325-2232
FAX: 1-785-325-2162

1798 18th Rd.
Clay Center, KS 67432
Voice: 1-785-632-5621
FAX: 1-785-632-2564

*Recorded under 4900 Bailer*

CORY00 BILL CORY
529 WEST 18TH ST.
CONCORDIA, KS 66901

*32 5.06*

| Tax | D | Qty | Description | | Price | Amount |
|-----|---|-----|-------------|---|-------|--------|
| | | | PARTS COUNTER | | | |
| N | | 1 | CAS 6522668 | HUB | 42.67 | 42.67 |
| N | | 4 | CAS 58511 | SPRING, COMP | 3.55 | *ORDERED* |
| N | | 2 | CAS 37-1820 | DOWEL | 5.91 | *ORDERED* |
| N | | 1 | CAS 87773 | RIN, LOCK | 3.26 | *ORDERED* |
| N | | 1 | CAS 700706798 | HOSE, FLEXIB | 25.55 | *ORDERED* |
| N | | 1 | CAS 219-81 | ADAPTER | 4.67 | *ORDERED* |
| N | | 1 | CAS 1978450C2 | SPRING | 8.75 | 8.75 |
| N | | 1 | CAS 700715493 | SEAL | 30.20 | *ORDERED* |
| N | | 2 | CAS 700715492 | CLAMP | 7.43 | 14.86 |
| | | | | ** TOTAL PARTS COUNTER | | 66.28 |
| N | FRIEGHT | | FREIGHT | | | 8.50 |

Bill To
BILL CORY
529 W 18TH
CONCORDIA KS 66901

## DALE S REPAIR
507 RAILROAD ST
AGENDA, KS 66930

Date  9/1/2007

Invoice #   11317

Project

| Item | Description | Qty | Rate | Serviced | Amount |
|------|-------------|-----|------|----------|--------|
| TRIP | TRIP & LABOR | 1 | 50.00 | | 50.00 |

*adjust steering linkage to start swather*

*Dale Kopsa*

*Exh 9*

FARM REPAIR          Subtotal   $50.00   Sales Tax   $0.00   **Total**          $50.00



**YOU'LL FIND IT AT CARQUEST™**

CARQUEST AUTO PARTS

CO OF CONCORDIA KS # 1960          PAGE      1
1615 LINCOLN AVE               REF# 55643
CONCORDIA, KS  66901
(785) 243-2144
WE WELCOME YOUR COMMENTS!
CONTACT CARQUEST VOICE OF THE          600014
CUSTOMER DEPARTMENT 877-735-2233

2729-46374

ANY PART RETURNED FOR CREDIT MUST BE ACCOMPANIED BY THIS RECEIPT.     SEE CARQUEST STORE FOR DETAILS OF THIS COAST TO COAST GUARANTEE.

REPUBLICAN VALLEY FARMS          REPUBLICAN VALLEY FARMS
638 E14TH                      638 E14TH
CONCORDIA, KS  66901            CONCORDIA, KS  66901

| INVOICE NO. | CUSTOMER NO. | DATE | CUST. P.O. NO. | SALES NO. | CNTR NO. | SHIP VIA | TERMS |
|---|---|---|---|---|---|---|---|
| 2729-46374 | 600014 | 08-23-07 | | | NC11 | | CREDIT C |

| MFG. PART NUMBER | ORDERED | SHIPPED | BKO | LIST PRICE | NET | NET CORE | EXT. AMOUNT | TAX |
|---|---|---|---|---|---|---|---|---|
| CFT 87569 AIR FILTER-HD | 3 | 1 | | 27.62 | 26.84 | 0.00 | 26.84 | N/N |
| CFT 85772 OIL FILTER - HD | 2 | 2 | | 21.66 | 8.25 | 8.00 | 16.50 | N/N |

WARRANTY DISCLAIMER: "The factory warranty constitutes all of the warranties with respect to the sale of all items. The seller hereby expressly disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of all items."

| FREIGHT | LABOR | SHOP | TOTAL CORE | TAXABLE AMT. | SALES TAX | | SUB TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | 0.00 | 0.00 | | 43.34 |
| | 43.34 | | | | 111.14 | PAY THIS AMOUNT | 43.34 |
| 11:32 AM | RECEIVED BY  X | | | LIST TOTAL ▶ | | | CRED |

Exb. 13

5 Juni '07

Bill Cary

Swath 63A alfalfa

#101 A        Total $630

Joe Odett

# DELIVERY AND PICKUP ORDER

## THIS IS NOT AN INVOICE



**Straub International**
P.O. Drawer 1606
Hwy 56 & Airport Rd.
Great Bend, KS 67530
(620) 792-5256

DPO  **007127**

Customer Name _____

Address _____

City / State  *TALMO*

## DELIVER

| QTY. | DESCRIPTION OF MACHINE / ATTACHMENT / EXTRAS | SERIAL NUMBER | HOURS | TAG NO. |
|------|---------------------------------------------|---------------|-------|---------|
| 1 | *Houston 8450 Swather* | *HL92230 Y680* | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

- [ ] SALE
- [ ] DEMO
- [ ] RENTAL/LEA
- [ ] TRANSFER
- [ ] OTHER (EXPLAIN)
- [x] SERVICE/RE

## PICKUP

| QTY. | DESCRIPTION OF MACHINE / ATTACHMENT / EXTRAS | SERIAL NUMBER | HOURS | TAG NO. |
|------|---------------------------------------------|---------------|-------|---------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

- [ ] TRADE IN
- [ ] FACTORY SHIPMENT
- [ ] CONSIGNME
- [ ] STORE TRUCK
- [ ] PICKED UP E CUSTOMER

Checked On Truck And Delivered By _____

Received in Good Order By: _____

TOTAL MILES *70*  HRS: ___

Delivery Date *7-2-C*

MACHINE RETURNED: _____

Inspection of machines was made and the following damage noted: _____

*812*

Comments / Instructions: _____

*Ex-12*

| CUSTOMER SERVICE AUTHORIZATION |
|---|

I HEREBY AUTHORIZE THE REPAIR WORK TO BE DONE AS DESCRIBED ON THE MACHINE(S) NAMED HEREON. ALL REPAIR PARTS ARE TO BE BILLED AT YOUR REGULAR PRICES. I AGREE TO PAY CASH FOR SUCH REPAIR PARTS AND LABOR ON DELIVERY OF MACHINE(S) OR ON TERMS SATISFACTORY TO YOU AND UNTIL PAID IN FULL. ANY UNPAID BALANCE SHALL CONSTITUTE A LIEN ON THE MACHINERY. I FURTHER AGREE THAT YOU WILL NOT BE HELD RESPONSIBLE FOR LOSS OR DAMAGE TO SAID MACHINERY FROM FIRE, THEFT OR OTHER CAUSES BEYOND YOUR CONTROL.

*Bill Cory Ifel*

Signed _____  Date _____

**STRAUB INTERNATIONAL, INC**
3637 South 9th Street
Salina, Kansas 67401

**785-825-1300**

SOLD TO                                                    SHIP TO
SCOED0   EDNA CORY
         529 W 18TH. ST.
         CONCORDIA, KS 66901

```
HESSTON   8450    01 SN:HK92234/HEADER   HR     0 W:07 C:
Sold By: ACK11   PO #:           Date  8/23/07 FARM SALINA      FA22270
Ship By:         Tax #:                 11:25:01 PRT:  1   Open
```

| Tax | D | Qty | Description | ----------------------------* | Price | Amount |
|---|---|---|---|---|---|---|
| | | | GROUP :          01 | | | |

REPLACE THERMOSTATS AND COOLANT TEMP SENDER.
REPLACED OUTER DROP DIVIDERS ON BOTTOM OF HEADER.
REPLACED HYDRAULIC OIL LEVEL SENDER.
REPLACED BOLTS AND WASHERS ON ANEROID AT PUMP.
REMOVE ROTARY SCREEN TO REPAIR AND ADJUST. INSTALL ON UNIT.
REPLACE CHAIN IDLER SPROCKETS AT END OF HEADER.
REPAIR GREASE FITTINGS TO TAKE GREASE ON CRIMPER.

| Tax | Qty | Part | Description | | Price | Amount |
|---|---|---|---|---|---|---|
| | | MISC PARTS SHOP | | | | |
| F | 1 | RH CROP DIVIDER | | | 67.97 | 67.97 |
| F | 1 | LH DIVIDER | | | 67.97 | 67.97 |
| | | | ** TOTAL MISC PARTS SHOP | | | 135.94 |
| | | PARTS SHOP | | | | |
| F | 2 | CAS 565442R91 | BRG.SPROCK | D036 | 12.68 | 25.36 |
| F | 1 | CAS 700715493 | SEAL | | 28.82 | 28.82 |
| F | 1 | CAS 700708219 | SENDER, TEM | | 18.18 | 18.18 |
| F | 1 | CAS A77736 | THERM KIT | R013 | 22.79 | 22.79 |
| F | 1 | CAS 700715499 | SWITCH | | 283.10 | 283.10 |
| | | | ** TOTAL PARTS SHOP | | | 378.25 |
| | | OUTSIDE LABOR | | | | |
| F | | LABOR FOR REPAIRS ON SWATHER | | | | 487.50 |

I certify that I am engaged in farming.

** SUBTOTAL        1001.69

X_____        Cash Sale

| PAY THIS AMOUNT ➡ | $1001.69 |
|---|---|

Exch 13

# GENERAL INFORMATION

## ⚠ WARNING

Before doing any maintenance or service work on the tractor or the header, you must:

- Park the machine on a solid level surface.
- Put all controls in NEUTRAL.
- Apply the parking lock.
- Center and lock the steering wheel.
- When working on the tractor, lower the header to the floor.
- When working on the header, raise the header all the way.
- Stop the engine and take the key with you.
- Look and Listen! Make sure all moving parts have stopped.
- If the header is raised, install the cylinder safety stop on the left-hand header lift cylinder.

## ⚠ WARNING

When the header is raised for service or maintenance work, the cylinder safety stop must be installed on the left-hand header lift cylinder to prevent lowering of the header.

## ⚠ WARNING

Never check or lubricate chains while machine is running.

## ⚠ WARNING

After lubricating, servicing or adjusting the machine, make sure all tools and equipment have been removed.

## ⚠ WARNING

All shields and guards must be in position before operating the machine.

Exh 14

# SERVICING

 **⚠ WARNING**

Before doing any maintenance or service work on the tractor or the header, you must:
Park the machine on a solid level surface.
Put all controls in NEUTRAL.
Apply the parking lock.
Center and lock the steering wheel.
When working on the tractor, lower the header to the floor.
When working on the header, raise the header all the way.
Stop the engine and take the key with you.
Look and Listen! Make sure all moving parts have stopped.
If the header is raised, install the cylinder safety stop on the left-hand header lift cylinder.

 **⚠ WARNING**

When the header is raised for service or maintenance work, the cylinder safety stop must be installed on the left-hand header lift cylinder to prevent lowering of the header.

**⚠ WARNING**

Never check or lubricate chains while machine is running.

**⚠ WARNING**

After lubricating, servicing or adjusting the machine, make sure all tools and equipment have been removed.

**⚠ WARNING**

All shields and guards must be in position before operating the machine.

## General Information

This section contains instructions for servicing the systems and components of the windrower tractor. The Service Checklist, in this section, identifies the service points in order of frequency.

Exh 15

 

**Straub International**

Highway 56 & Airport Road
Great Bend, KS 67530



1350 U.S. POSTAGE   PB3571793
3063 $ **00.39** 0 MAY 09   2007
9409 MAILED FROM ZIP CODE   67530
PITNEY BOWES

Bill Cory
529 W. 18th
Concordia, KS 66901

6690136201 R001



**Straub International**
P.O. Drawer 1606
Great Bend, Kansas 67530

Bill for Salina



Rec 24 aug '07



Bill Cory
529 W 18th St.
Concordia, KS 66901



BILL J CORY
529 W 18TH ST
CONCORDIA, KS 66901-5201

State of Kansas
Office of the Attorney General
Consumer Protection and Antitrust Div.
120 SW 10th Ave, 2nd Fl
Topeka
KS 66612-1597

8661291226 C056

Office of the Attorney General
Consumer Protection / Antitrust Div.
120 SW 10th St, Suite 430
Topeka, KS
66612-1597

8661291226 C056



Exh. 17

LAW OFFICES OF
**THOMAS J. BERSCHEIDT**
2107 FOREST – P. O. BOX 550
GREAT BEND, KANSAS 67530
(620) 792-7777

IN THE DISTRICT COURT OF REPUBLIC COUNTY, KANSAS

| | | |
|---|---|---|
| BILL J. CORY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2010-CV-04 |
| v. | ) | |
| | ) | |
| STRAUB INTERNATIONAL, RON | ) | |
| STRAUB and SCOTT DEWERFF, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION FOR A HEARING IN AID OF EXECUTION

COMES NOW the defendants, Straub International, Ron Straub and Scott DeWerff and move the Court for a hearing in aid of execution. In support of this motion the following is presented:

1.  That on February 25, 2011, the District Court granted judgment for attorney's fees in favor of the defendants and against the plaintiff in the amount of $7,895.63.

2.  That plaintiff filed a Notice of Appeal concerning the award of attorney's fees on or about March 7, 2011.

3.  That plaintiff has not filed a supersedeas bond in order to stay execution on the judgment rendered.

4.  That defendants, as judgment creditors, are without sufficient knowledge of the judgment debtor's assets to properly advise the sheriff where and on what to levy execution.





Cory v. Straub
Motion for Hearing in Aid of Execution

5.    That in the alternative, plaintiff, as judgment debtor, may file with the Clerk of the District Court of Republic County, Kansas, a supersedeas bond in an amount to be determined by the District Court in order to stay execution. The defendants would request that the supersedeas bond be set at 125% of the judgment or $9,869.53 and that said amount be deposited with the Clerk of the District Court in an interest bearing account to remain until such time that a decision has been rendered on plaintiff's appeal by the Kansas Court of Appeals.

6.    That in the absence of the plaintiff's agreement to post a supersedeas bond, defendants' request that the hearing in Aid of Execution be completed at the August motion date as set out in the attached notice of hearing.

WHEREFORE, for the reasons stated, defendants requests that this Motion be granted.

THOMAS J. BERSCHEIDT

ORIGINAL SIGNED BY
By TOM BERSCHEIDT
Tom Berscheidt        #6663
Attorney for Defendants

## NOTICE OF HEARING

PLEASE TAKE NOTICE that a hearing on the Motion for Aid in Execution will be held on Monday, August 8, 2011 at 2:00 p.m. in the District Court of Republic County, Kansas

ORIGINAL SIGNED BY
TOM BERSCHEIDT
Thomas J. Berscheidt        #6663

2

Cory v. Straub
Motion for Hearing in Aid of Execution

## CERTIFICATE OF SERVICE

I, Thomas J. Berschedit, hereby certify that on July 7, 2011 a true and correct copy of the above and foregoing Motion for Hearing was properly addressed and mailed postage paid to:

Bill Cory
529 West 18th Street
Concordia, Kansas  66901

and the original to:

Clerk of the District Court
Republic County Courthouse
1815 M Street
Belleville, Kansas  66935

ORIGINAL SIGNED BY
TOM BERSCHEIDT

Tom Berscheidt        #6663

2

```
1

2                         I N D E X

3

4     Argument by Mr. Berscheidt                    03

5     Response/Argument by Mr. Cory                  05

6

7     Certificate                                    12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Exh.  19

```
1                THE COURT:   The next matter the Court takes
2    up is 10CV04, Bill Cory vs. Straub International.
3                MR. BERSCHEIDT:   Your Honor.
4                THE COURT:   The Plaintiff, Bill Cory,
5    appears in person, pro se.   The Defendant appears by
6    counsel, Tom Berscheidt.
7        This matter is before the Court today on a motion for
8    hearing in aid of execution.
9        Are the parties ready to proceed?
10               MR. BERSCHEIDT:   We're ready, Your Honor.
11               THE COURT:   Are you ready, Mr. Cory?
12               MR. CORY:   Beg your pardon, ma'am?
13               THE COURT:   Are you ready?
14               MR. CORY:   Yes, I'm here.
15               THE COURT:   All right.   You may be seated.
16       Mr. Berscheidt, you may present your argument.
17               MR. BERSCHEIDT:   Well, Your Honor, we filed
18   a motion for the -- asking for a hearing in aid of
19   execution, which I trust you'll grant, so we can
20   complete that.
21       All we're really requiring, or not requiring, but
22   we're requesting that Mr. Cory post a supersedeas bond,
23   and the amount that I chose was 125 percent of the
24   judgment rendered by the Court.
25       That's to offset, pardon me, additional expenses.   We
```

1   even put in our motion, and we sent a letter to Mr. Cory

2   in the past, we're not intending to take the money to

3   satisfy the judgment.

4      We would like it to be paid in to the Clerk of the

5   District Court, and depending on the Court of Appeals'

6   decision, if it's reversed, money goes back to Mr. Cory.

7      If it's sustained, we have the right to apply that

8   money to the judgment rendered by the Court for

9   attorneys' fees and expenses, plus any additional fees

10  and expenses which the Appellate Court may allow if

11  we're successful in defending that appeal.

12     In the alternative then, if Mr. Cory doesn't want to

13  comply with that, unless there's been new law written,

14  statutorily, I think you have to have a bond or we can

15  levy execution, and I ask he be sworn in at the

16  conclusion of his argument and that I could be given

17  permission to do an aid in execution, so in summary,

18  that's it.

19            THE COURT:  I have a question.  I noted, I

20  believe there was some issue with regard to a

21  supersedeas bond before the Court of Appeals.

22            MR. BERSCHEIDT:  Mr. Cory filed a motion for

23  a supersedeas bond to the Court of Appeals, which they

24  rejected.

25     The proper forum and venue for determining

1   supersedeas bonds is in this court, Your Honor, and so

2   that's all I'm aware of.  If there's something else, it

3   hasn't been sent to me.

4           THE COURT:  I did not actually see

5   documents, just the calendar on it.

6           MR. BERSCHEIDT:  There's a -- on his motion,

7   handwritten by -- signed by, it appears to be Carol

8   Green, I can't really read the writing if not, but it

9   says, "Denied on present showing Appellant should

10  request bond from the District Court before seeking

11  remedy from this court," and so -- (interrupted)

12          THE COURT:  All right.

13          MR. BERSCHEIDT:  (Continuing) -- which is

14  true, they don't have the authority statutorily to

15  determine a supersedeas bond unless it would be a direct

16  appeal in a rather unusual circumstance as you would

17  know.

18          THE COURT:  Mr. Cory, your response to the

19  motion?

20          MR. CORY:  I filed the motion for

21  supersedeas bond last April with the Court of Appeals,

22  and I did ask, invoke the jurisdiction of the Court of

23  Appeals pursuant to 60-2103a, and that simply states,

24  after the -- the action is so docketed, application for

25  leave to file bond may be made only through the

```
 1   Appellate Court, and that's what I did.  And the
 2   Appellate Court sent back a notice.
 3      Well, I'll -- I'll give you and Mr. Bersheidt copies
 4   of the -- of what I've filed there.
 5            MR. BERSCHEIDT:  Thank you, sir.
 6            THE COURT:  And I received back from Carol
 7   Green, "Denied on present showing Appellant should
 8   request bond from the District Court before seeking
 9   remedy from this court."
10      Well, I read the statute, this is a Kansas statute.
11   The only one with jurisdiction is the Appellate Court,
12   so I realize this Court doesn't have jurisdiction to
13   take a supersedeas bond, and I called the Appellate
14   Court, and they said, "That's right, District Court has
15   lost jurisdiction based on this statute," and also, the
16   fact that the whole case has been transferred to the
17   Appellate Court.
18      And they told me that I would have to write a motion
19   to the Court of Appeals requesting that the Court of
20   Appeals provide jurisdiction to this Court.
21      Well, I never did that, because this is a -- this is
22   a state statute, and if the legislature of the state of
23   Kansas had desired this Court have -- to have
24   jurisdiction over the supersedeas bond, they would have
25   put it in here, or they would have put in an exception
```

1  where that is possible, so I don't know what the Court
2  of Appeals is doing, because it's highly doubtful that
3  they can just parcel out jurisdiction when it can only
4  be set by the legislature, or in case of the government,
5  by Congress.  That's the only way jurisdiction could be
6  given.
7      The courts interpret how they're going to apply the
8  jurisdiction which the legislature provides to them, but
9  they cannot provide jurisdiction to other courts or
10 agencies.  Any jurisdiction is held by the Court of
11 Appeals.
12     I gladly put up the money and pay the bond, but I can
13 only do that which is legally correct, and I haven't
14 seen anything here that is legally correct except the
15 Court of Appeals taking my money and supplying the bond.
16         THE COURT:  And they've told you they're not
17 going to do that, Mr. Cory.
18         MR. CORY:  Beg your pardon?
19         THE COURT:  And they've told you they're not
20 going to do so.
21         MR. CORY:  Well, yes.  It's not me, it's the
22 courts.  I'm willing to pay it.
23         THE COURT:  Well, generally that is done at
24 the time of judgment before the appeal, that's when the
25 bond is set, so you came in a little bit late asking the

1    Court of Appeals to do it.

2       Now, Mr. Berscheidt is, I guess, willing to give you

3    a second shot at doing that today, posting the bond here

4    before this Court.

5                MR. CORY:  How's this Court get

6    jurisdiction, Your Honor?

7                THE COURT:  Otherwise, Mr. Cory, otherwise,

8    the judgment is not stayed, and I believe the defendants

9    will proceed with collecting on the judgment, all right?

10   Those are the two options.

11      Mr. Berscheidt, do you wish to respond?

12               MR. CORY:  Well, I'll do it, but I certainly

13   don't believe that's legal.  I'll pay the money.  I want

14   to get rid of the money and get rid of this thing.

15               MR. BERSCHEIDT:  Well, with all due respect

16   to Mr. Cory, there's no reason to incur additional

17   expense.

18               MR. CORY:  The bottom -- (interrupted)

19               MR. BERSCHEIDT:  Hold on a second.  There is

20   no reason for us to incur additional expense.  If bond

21   is delivered to the Clerk, you don't have to pay me or

22   my client, all right, it's going to stay here.  It

23   cannot, by agreement, it won't be withdrawn without the

24   Court's approval, if that's all right with the Court,

25   until the appeal has been completed.

```
1                    THE COURT:  By a court order --
2    (interrupted)
3                    MR. BERSCHEIDT: Yeah.
4                    THE COURT:  (Continuing) -- is the only way
5    the Clerk will release the funds.
6                    MR. BERSCHEIDT:  Exactly.  So your
7    investment in that bond is certainly safe.
8       If we don't do that, I don't have any choice but to
9    have the Sheriff go out and levy execution on some of
10   your real estate.
11                   MR. CORY:  I don't have any real estate.
12                   MR. BERSCHEIDT:  Mr. Cory, I've got you
13   under oath saying you own all the stock in that
14   corporation.  I went down and got the legals.
15                   MR. CORY:  Oh, that.  I don't own the
16   corporation, I have no stock at the corporation.  It's
17   never been issued.
18                   THE COURT:  All right, counsel.
19                   MR. BERSCHEIDT:  All right.  We can argue
20   that later.
21                   MR. CORY:  All right.
22                   THE COURT:  Mr. Cory, I am giving you an
23   option right now.  You may post a supersedeas bond with
24   the Clerk of the District Court.
25                   MR. CORY:  Right.
```

1       THE COURT:  The money is held there until

2  the Court of Appeals makes any decision.

3       MR. CORY:  Right, I'll do that.

4       THE COURT:  In the amount of $9,869.53.

5       MR. CORY:  Right.

6    Now, Your Honor -- (interrupted)

7       MR. BERSCHEIDT:  Is there a deadline on

8  that?

9       MR. CORY:  I don't believe I owe a

10  supersedeas bond, because this is on legal fees, and I

11  believe the argument of -- of legal fees was improper.

12       THE COURT:  I know you do.  That's the issue

13  on appeal.  That's why the money just gets held until

14  the decision of the Court of Appeals is made.

15    It doesn't go -- it just sits until the Court of

16  Appeals makes their decision.

17       MR. CORY:  Well, in the United States, all

18  courts, every party pays its own legal fees unless

19  there's a bad faith exception, and there is no bad faith

20  exception in this case.

21       THE COURT:  All right.  Mr. Cory, are you

22  going to post the supersedeas bond?

23       MR. CORY:  Yes.

24       THE COURT:  Are you going to do that today?

25       MR. CORY:  I'll do it right now.

```
 1                    THE COURT:  Thank you.
 2                    MR. BERSCHEIDT:  Your Honor, I'll prepare an
 3    order, circulate it, file it pursuant to Rule 170, send
 4    a copy to Mr. Cory.
 5                    THE COURT:  That's fine, but the Clerk's
 6    going to take the bond now.
 7                    MR. BERSCHEIDT:  All right.
 8                    THE COURT:  $9,869.53.
 9                    MR. CORY:  How much was that, Your Honor?  I
10    have a -- can I get a copy of that number?  I don't have
11    a pen.
12                    THE COURT:  The Clerk has the number.
13      All right.  It's $9,869.53 -- (interrupted)
14                    MR. CORY:  Okay.
15                    THE COURT:  (Continuing) -- to be posted
16    immediately.
17                    MR. BERSCHEIDT:  Thank you.
18                    THE COURT:  Thank you.
19                    (End of proceedings.)
20
21
22
23
24
25
```

```
 1   STATE OF KANSAS       )
                           )  ss:
 2   COUNTY OF CLOUD       )

 3                  C E R T I F I C A T E

 4        I, Becky L. Hoesli, a Certified Shorthand

 5   Reporter, and the regularly appointed, qualified, and

 6   acting official reporter of the Twelfth Judicial

 7   District of the State of Kansas, do hereby certify that

 8   as such official reporter, I was present at and reported

 9   in machine shorthand the above and foregoing proceedings

10   in Case Number 10CV04, Bill Cory, Plaintiff, vs. Straub

11   International, et al., Defendants, heard on August 8th

12   2011, before the Honorable Kim W. Cudney, District Judge

13   of the Twelfth Judicial District.

14        I further certify that upon the Request for

15   Transcript of Mr. Bill Cory on August 9th, 2011, a

16   transcript of my shorthand notes was prepared, and that

17   the foregoing transcript consisting of 12 pages is a

18   true copy of all of the proceedings.

19        SIGNED, OFFICIALLY SEALED, AND FILED with Mr.

20   Bill Cory, 529 West 18th, Concordia, Kansas  66901, this

21   10th day of August, 2011.

22

23                         Becky L. Hoesli, CSR/RPR

24                         SC# 0974

25
```

IN THE DISTRICT COURT OF REPUBLIC
COUNTY, KANSAS

BILL J. CORY
        Plaintiff,

vs.                                    Case No. 2010 CV 04

STRAUB INTERNATIONAL,
RON STRAUB and SCOTT DEWERFF,
        Defendants.

```
                          FILED
                   REPUBLIC COUNTY KANSAS

                   2011 FEB 28   AM 9 32

                   CLERK

                   DEPUTY
```

### JOURNAL ENTRY

NOW on this 7th day of January, 2011, comes on for hearing the Defendants' Motion for Summary Judgment. Defendants appear by and through their counsel, Thomas J. Berscheidt. Plaintiff does not appear.

Whereupon the Court granted Defendants' Motion for Summary Judgment for the reasons stated on the record and pursuant to the Journal Entry dated February 1, 2011.

Whereupon, Defendants requested an award of attorney fees pursuant to K.S.A. 60-211. The Court takes the matter under advisement.

NOW on this 25th day of February, 2011, the Court in Chambers at Washington, Kansas, after having considered the file, pleadings, evidence and statements of counsel finds, concludes, and orders as follows:

  1. On January 7, 2011, the court granted Defendants' Motion for Summary
     Judgment. The Court noted that Plaintiff did file a Response to the Motion

Exh, 20

for Summary Judgment but found that the Response failed to comply with statutory or Supreme Court rules.  Accordingly, the Court adopted the facts set forth in Defendants' motion as uncontested.

2.  Included is Defendants' Motion for Summary Judgment was a request and argument for an award of attorney fees.

3.  Plaintiff brought this action against the Defendants alleging, in part, a violation of the Kansas Consumer Protection Act.  However, before filing this action, Plaintiff had filed a consumer complaint with the Kansas Attorney General alleging that Defendants violated the Kansas Consumer Protection Act.

4.  The Attorney General advised Plaintiff by letter opinion on November 3, 2008, that investigation of the facts revealed that Edna Cory Investments purchased the swather at issue and that the corporation made payment on the swather.  The Attorney General concluded and advised Plaintiff that the purchase did not quality as a consumer transaction as defined by K.S.A. 50-624(c), because a corporation, rather than an individual, made the purchase.

5.  Despite the investigation by the Kansas Attorney General and his opinion letter to Plaintiff declining to pursue the matter under the Kansas Consumer Protection Act, Plaintiff brought suit in this action making the

2

same claim.

6. In his petition, Plaintiff also raised claims alleging violations of 18 USC §1962 (c) and 18 USC §1982 (d). These claims were also dismissed by the Court because Plaintiff made no specific allegations or claims of violation of Kansas law which would be in violation of the RICO Act.

7. Defendants submit that Plaintiff's claims in this action are entirely without merit as evidenced by the granting of their Motion for Summary Judgment. Defendants further assert that Plaintiff had the opinion of the Kansas Attorney General that his consumer protection claim was without merit. Finally, Defendants assert that Plaintiff has made 3 prior, unsuccessful attempts to assert RICO claims in state or federal courts. For these reasons, Defendants seek attorney fees under K.S.A. 60-211.

CONCLUSIONS OF LAW

K.S.A. 60-211 provides in pertinent part:

"(c) . . . If a pleading, motion or other paper provided for by this article is signed in violation of this section, the court, upon motion or upon its own initiative upon notice and after an opportunity to be heard, shall impose upon the person who signed it or a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including reasonable attorney fees."

The plain wording of K.S.A. 60-211 requires that a district court "shall impose"

3

a sanction when a violation of K.S.A. 60-211(b) occurs.   In this case, Plaintiff knowingly filed his claim alleging a violation of the Kansas Consumer Protection Act, even after the Attorney General advised that he did not have a valid claim because the act did not apply to corporations. In addition, it appears that Plaintiff has filed similar RICO actions in federal court. See, Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226 (10th Cir. 2006); Cory v. Fahlstrom, 2003 U.S. Dist. LEXIS 5952 (D.Kan. 2003); Cory v. Lang, 843 F.2d 1386 (4th Cir. 1988).

Thus, Plaintiff exhibits a pattern of alleging such violations and does so unsuccessfully. Plaintiff's pleading apparently was filed for the improper purpose of harassing Defendants or to impose the cost of litigation on the Defendants. Filing this action for an improper reason is a violation of K.S.A. 60-211(b)(1). Accordingly, Defendants' request for attorney fees is granted.

Defendants' seek $8,289.45 in attorney fees and expenses incurred in litigating the case. KRPC 1.5(a)(2010 Kan.Ct.R. Annot. 458) of the Kansas Rules of Professional Conduct outlines the eight relevant factors to be considered in determining the reasonableness of an attorney fee. Defendants' counsel submits an itemized billing showing the time spent on each particular activity in the case and the rate of the charge. The rate charged by Mr. Berscheidt is customary in the locality for similar legal services. In addition, Mr. Berscheidt is an attorney known to the Court to have experience in the issues involved. Further, Plaintiff's claims are

4

wordy, convoluted and often difficult to follow, including claims made under 18 USC §1962, thereby making the issues involved more difficult than normal to address.

Accordingly, this Court assesses $7,895.63 of Defendants' attorney fees and expense against the Plaintiff and enters judgment in this amount in favor of the Defendants. The Court has deducted from the amount requested expenses for travel time but has allowed the charge for travel time.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT** That Defendants' Motion for Attorney Fees is granted.

**IT IS FURTHER ORDERED BY THE COURT** That the above findings and conclusions constitute and are the order of the Court.

**IT IS SO ORDERED.**

Kim W. Cudney
District Judge

cc: Thomas J. Berscheidt
    Bill Cory

CERTIFICATION
I Certify this is a true copy as appears of record in the District Court of Republic County, Kansas. Witness my hand and seal this 28th day of February, 20 11

Deputy Clerk of District Court

KANSAS
SEAL OF DISTRICT COURT
REPUBLIC COUNTY

5

LAW OFFICES OF
**THOMAS J. BERSCHEIDT**
2107 FOREST – P. O. BOX 550
GREAT BEND, KANSAS 67530
(620) 792-7777

IN THE DISTRICT COURT OF REPUBLIC COUNTY, KANSAS

| | |
|---|---|
| BILL J. CORY ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2010-CV-04 |
| v. ) | |
| ) | |
| STRAUB INTERNATIONAL, RON ) | |
| STRAUB and SCOTT DEWERFF, ) | |
| ) | |
| Defendants. ) | |

## MOTION FOR SUMMARY JUDGMENT   ℛ - 83

COME NOW the defendants, through their attorney, Tom Berscheidt, pursuant to K.S.A. 60-256, and move the Court for Summary Judgment on the specific issues identified herein.

### FACTUAL STATEMENT

1.      On May 9, 2007, the plaintiff (Cory)  purchased a used 8450 Hesston swather from Straub International (Straub). The purchase price was $34,900.00 less trade in value for the older swather of $14,900.00. (Exhibit "A" attached.)

2.      The net balance due and owing, $20,000.00, was paid with an Edna Cory Investments Inc. check, drawn on the Corus Bank, Chicago, Illinois, signed by Cory. (Exhibit "B" attached.)

3.      The swather was delivered to Cory's farm in Republic County.  The sales representative, Scott DeWerff (DeWerff), one of the defendants herein, was present and noticed that some additional work was needed on the sickle drive, (Pitman).  He arranged

Exh.  21

Motion for Summary Judgment
Cory v. Straub

for Straub in Salina to do the necessary repairs on the pitman and sickle at the Cory farmstead. The repairs were completed at no additional charge. Total value was $1,400.00. (Exhibit "C" attached.)

4.     Cory came forth with additional complaints concerning the used swather. As a result , arrangements were made for Straub of Salina to pick up the swather, provide additional service and repairs and return the same to Cory's farm. The total value of the additional repairs was $3,239.03. The repairs were completed at no charge to Cory. (Exhibit "D" attached.)

5.     Cory admits that he never test-drove the swather, either prior to the date of purchase or on the date of delivery. Notwithstanding, he issued payment on May 9, 2007. (Cory Depo. page 23: 22 & 24:18)

6.     Cory filed a lengthy consumer complaint with the Attorney General on December 2, 2007, alleging that Straub violated the Kansas Consumer Protection Act.

7.     The Attorney General rendered his written opinion by letter dated November 3, 2008 (Exhibit "E" attached. See also plaintiff's Answer to Request for Admissions No. 4.)

8.     Cory has admitted that on May 9, 2007, Edna Cory Investments Inc., was a viable corporation, registered outside the State of Kansas. (Request for Admissions No. 3.)

9.     Cory filed the present lawsuit against the defendants on May 7, 2010. Count I alleges a violation of the Kansas Consumer Protection Act (KCPA). Count II alleges that defendants violated 18 USC, Sec. 1962(c) and Court III alleges that defendants violated 18 USC Sec 1962(d).

2

Motion for Summary Judgment
Cory v. Straub

10.    Cory alleges in his Petition that the defendants conspired among themselves and with non-defendant co-conspirators to defraud the plaintiff and buyers of their used equipment for their own benefit and unjust enrichment. (Plaintiff's Petition paragraph 32.)

11.    Cory admits that he has never met Ron Straub. (Depo. 39:22) He further admits that he does not have any witnesses who will testify to the allegations set out in paragraph 32 nor does he have "anything in writing" that would verify said allegations. (Depo. 40:20 & 23)

12.    Cory has not produced any evidence to establish or prove that Ron Straub and Scott DeWerff have acted in any capacity or engaged in any conduct which was separate and apart from their status as an agent or employee of Straub International.

## ARGUMENT AND AUTHORITIES

The controlling law of Summary Judgment has been stated and restated numerous times.

> "Summary Judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citation omitted.]'" *Nungesser v. Bryant*, 283 Kan. 550, 566, 153 P.3d 1277 (2007). *Troutman v. Curtis,* 286 Kan. 452 185 P.3d 930.

3

LAW OFFICES OF
**THOMAS J. BERSCHEIDT**
2107 FOREST – P. O. BOX 550
GREAT BEND, KANSAS 67530
(620) 792-7777

FILED
REPUBLIC COUNTY KANSAS

2011 FEB 1 AM 10 20

CLERK

IN THE DISTRICT COURT OF REPUBLIC COUNTY, KANSAS

DEPUTY

BILL J. CORY                      )
                                  )
        Plaintiff,                )
                                  )        Case No. 2010-CV-04
v.                                )
                                  )
STRAUB INTERNATIONAL, RON         )
STRAUB and SCOTT DEWERFF,         )
                                  )
        Defendants.               )
                                  )        (R-I, 178)
                                           R-178

## JOURNAL ENTRY

NOW on this 7th day of January, 2011, defendants' Motion for Summary

Judgment comes on for hearing. Defendants appear through their attorney, Tom

Berscheidt. There are no other appearances.

THEREUPON, counsel for defendants advised the Court that Mr. Cory had

previously filed a Motion to Extend Time for personal appearance. Further, counsel

advised that Mr. Cory called his office and visited with defense counsel's legal

assistant informing her that he was not attending the oral arguments scheduled for this

date.

THEREUPON, the Court advised counsel for defendants to proceed with his

Motion.

THEREUPON, at the conclusion of the defendant's argument the Court issued

the following Order:

Exh. 22

**JOURNAL ENTRY**
Bill Cory v. Straub International, at al
Republic County : 10-CV-04

1.   The plaintiff's Response to defendants' Summary Judgment Motion fails to comply with statutory or Supreme Court Rules.   Therefore, the factual statement as presented in the defendants' Motion is deemed uncontested and those facts are admitted.

2.   The transaction between Mr. Cory and the defendants was actually through a Corporation and said Corporation is not entitled to the protection of the Consumer Protection Act.

3.   That Mr. Cory has made so specific allegations or claims of violation of Kansas Law, which would be in violation of the RICO Act.   His failure to assert those violations renders RICO inapplicable to Counts II and III of the Petition.

4.   The defendants' Motion for Summary Judgment is granted.

5.   The defendants' requested the Court to award attorney's fees and said request is taken under advisement and the Court will issue a Journal Entry stating its decision with regard to attorney's fees.

6.   The transcript of this proceeding shall be incorporated herein by reference.

7.   Counsel for defendants should prepare a  Journal Entry, which may be presented pursuant to Supreme Court Rule 170.

IT IS SO ORDERED.

Hon. Kim Cudney
District Court Judge

2

## JOURNAL ENTRY

Bill Cory v. Straub International, at al
Republic County : 10-CV-04


APPROVED:

WILLIAM J. CORY


_____

Bill Cory,        Pro Se



THOMAS J. BERSCHEIDT

_____
Tom Berscheidt        #6663
Counsel for Defendants

3

NOT DESIGNATED FOR PUBLICATION

No. 105,804

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BILL J. CORY,
*Appellant,*

v.

STRAUB INTERNATIONAL, RON STRAUB, and SCOTT DEWERFF,
*Appellees.*

MEMORANDUM OPINION

Appeal from Republic District Court; KIM W. CUDNEY, judge. Opinion filed January 6, 2012.
Affirmed.

*Bill J. Cory*, appellant pro se.

*Thomas J. Berscheidt*, of Great Bend, for appellees.

Before HILL, P.J., PIERRON, J., and BUKATY, S.J.

*Per Curiam*: Bill J. Cory, acting pro se, sued the defendants, Straub International,
Ron Straub, and Scott DeWerff after he purchased from them a used piece of farm
equipment known as a swather. He alleged the machine did not operate properly and the
defendants had violated the Kansas Consumer Protection Act (KCPA) and the Racketeer
Influenced and Corrupt Organizations Act (RICO). The district court granted the
defendants' summary judgment motion, finding the KCPA did not apply because the
purchaser of the machine was actually a corporation and Cory had failed to properly
plead the RICO cause of action. The court also granted the defendants sanctions in the
form of their attorney fees. Cory appeals, again pro se.

Exh. 23

1

We affirm, concluding that Cory did not properly controvert the defendants' statement of facts and those facts establish that the district court properly ruled and did not abuse its discretion in granting the attorney fee sanction.

Among other facts, the defendants' summary judgment motion asserted the following:

"1.     On May 9, 2007, [Cory] purchased a used 8450 Hesston swather from Straub International (Straub). The purchase price was $34,900.00 less trade-in value for the old swather of $14,900.00. . . .

"2.     The net balance due and owing, $20,000.00 was paid with an Edna Cory Investments, Inc. check, drawn on the Corus Bank, Chicago, Illinois, signed by Cory. . . .

"3.     The swather was delivered to Cory's farm in Republic County. The sales representative, Scott DeWerff . . . was present and noticed that some additional work was needed on the sickle drive, (Pitman). He arranged for Straub in Salina to do the necessary repairs on the pitman and sickle at the Cory farmstead. The repairs were completed at no additional charge. Total value was $1,400.00. . . .

"4.     Cory came forth with additional complaints concerning the used swather. As a result, arrangements were made for Straub of Salina to pick up the swather, provide additional service and repairs and return the same to Cory's farm. The total value of the additional repairs was $3,239.03. The repairs were completed at no charge to Cory. . . .

. . . .

"6.     Cory filed a lengthy consumer complaint with the [Kansas] Attorney General on December 2, 2007, alleging that Straub violated that Kansas Consumer Protection Act.

"7.     The Attorney General rendered his written opinion by letter dated November 3, 2008. . . .

"8     Cory has admitted that on May 9, 2007, Edna Cory Investments, Inc. was a viable corporation, registered outside the State of Kansas. . . .

"9.     Cory filed the present lawsuit against the defendants on May 7, 2010. Count I alleges a violation of the Kansas Consumer Protection Act (KCPA). Count II alleges that defendants violated 18 USC, Sec. 1962(c) and [Count] III alleges that defendants violated 18 USC Sec 1962(d).

2

"10.    Cory alleges in his Petition that the defendants conspired among themselves and with non-defendant co-conspirators to defraud the plaintiff and buyers of their used equipment for their own benefit and unjust enrichment. . . .

"11.    Cory admits that he has never met Ron Straub. . . . He further admits that he does not have any witnesses that will testify to the allegations set out in paragraph 32 [alleging a violation of 18 U.S.C. 1962(d)] nor does he have 'anything in writing' that would verify said allegations. . . .

"12.    Cory has not produced any evidence to establish or prove that Ron Straub and Scott DeWerff have acted in any capacity or engaged in any conduct which was separate and apart from their status as an agent or employee of Straub International."

Before we address Cory's arguments, we note that this court *sua sponte* filed an order for supplemental briefing since it appears that "the appellant may lack standing." This court did so because the foregoing facts raise the question that since Cory paid for the swather with a check drawn on a corporation which all sides apparently agree is solely owned by Cory, does that mean the corporation or Cory is the proper plaintiff in the case. After reviewing the briefs submitted in response to our order, it appears that the defendants view any issue in this regard as one of real party in interest as opposed to standing. They also concede they did not raise the issue in the district court and that if they had, Cory could have "filed a motion to substitute parties or to dismiss and re-file." Clearly, under K.S.A. 2010 Supp. 60-217, the district court could not have dismissed the case until "a reasonable time has been allowed for the real party in interest to ratify, join or be substituted into the action." Also, the defendants did not timely object on the basis of real party in interest and they have, therefore, waived any such objection. *O'Donnell v. Fletcher*, 9 Kan. App. 2d 491, 494, 681 P.2d 1074 (1984) (addressing real party in interest); 4 Gard and Casad, Kansas Law and Practice, Kansas C. Civ. Proc. Annot. § 60-217(a) (Parties; Capacity) (2011) (same).

We will address the merits of the appeal.

3

We first note that Cory's pro se brief lists two points in his Statement of Issues: whether the investigative report of the Consumer Protection Division of the Attorney General's Office was final and binding and whether the Republic County District Court was a court of competent jurisdiction. The statement is difficult to understand because the district court never ruled that it had to follow the decision of the Attorney General. Nor did Cory ever put forth any argument in the brief that called into question the jurisdiction of the district court even though he launched a personal attack on the trial judge. What the brief does argue, albeit in a rather rambling, disjointed, and convoluted manner that often misses the legal points raised in the defendants' summary judgment motion, is that the district court should find liability in his favor and allow a jury trial on damages. He essentially argues the district court erred in finding that he failed to comply with statutory and Supreme Court rules regarding summary judgment motions, in granting the defendant's motion, and, finally, in awarding sanctions.

*Failure to Comply with Statutory and Supreme Court Rules*

First, Cory summarily argues that the district court erred in finding that his failure to comply with statutory or Supreme Court rules deemed the facts as presented in the defendants' motion uncontested and admitted.

This argument clearly fails. Both K.S.A. 2010 Supp. 60-256(e)(2) and Supreme Court Rule 141(b) (2010 Kan. Ct. R. Annot. 228), obligated Cory to respond to the defendants' statement of uncontroverted facts by admitting them or pointing to specific evidence which established they were disputed. Cory either misunderstood or ignored what the Rule and the statute require of a party responding to a summary judgment motion, and this misunderstanding or ignoring continues on appeal.

In his appellate brief, Cory fails to provide any argument that he complied with the forgoing statute or Rule beyond the bald statement that the district court erred in finding

4

he was not in compliance. Neither does Cory argue on appeal that he substantially complied with Rule 141. See *Rhoten v. Dickson*, 290 Kan. 92, 104, 223 P.3d 786 (2010).

The fact that Cory is pro se does not offer him any relief from the requirements of Rule 141 and K.S.A. 2010 Supp. 60-256(e)(2).

> "A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel. Our legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for different classes of litigants is untenable. A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or to see that his or her case is properly presented to the court. A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se." *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986).

See *Guillory v. State*, 285 Kan. 223, 170 P.3d 403 (2007).

Since Cory, the party opposing summary judgment, failed to identify evidence disputing any of the defendants' factual representations set forth in support of summary judgment, the district court properly treated those factual representations as undisputed for purposes of deciding the motion. Rule 141, *Seitz v. Lawrence Bank*, 36 Kan. App. 2d 283, 289-90, 138 P.3d 388, *rev. denied* 282 Kan. 791 (2006).

*Did the Law and Facts Support the Granting of Summary Judgment.*

A failure to dispute the facts presented in support of a motion for summary judgment does not in and of itself permit the trial court to grant the motion. The uncontested facts still must show that the moving parties have established their legal right

to judgment. *Stormont-Vail Healthcare, Inc., v. Zoble*, No. 103,353, 2010 WL 4157102, at *3 (Kan. App. 2010) (unpublished opinion).

The next question for us, then, is whether the defendants' factual assertions, supported entry of summary judgment in favor of the defendants.

As an example of Cory's mistaken view of the district court's ruling, he first argues that the court had jurisdiction over the case and that his claims were not barred by the statute of limitations. The court, however, did not base its ruling on any lack of jurisdiction or the statute of limitations. The court instead found that (1) the purchaser in the transaction was actually a corporation which was not entitled the protection of the KCPA, and (2) Cory had failed to allege a violation of Kansas law, which rendered RICO inapplicable to his petition.

Regarding his KCPA claim, as we stated, Cory misreads the district court's decision. Initially, the defendants' motion for summary judgment admitted that the Attorney General's opinion letter was not binding on the court. Neither did the court treat it as final and binding, although it reached the same result.

Clearly that result reached by the district court was the correct one as the swather was not "property subject to a consumer transaction," as defined by the KCPA. A "consumer transaction" includes a sale of property within the state to a consumer. K.S.A. 2010 Supp. 50-624(c). A "consumer" means an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business, or agricultural purposes. K.S.A. 2010 Supp. 50-624(b).

Here, the purchaser of the swather was Edna Cory Investments, Inc., a viable corporation registered outside the state of Kansas. Apparently, Cory was the sole owner of the corporation and had authority to sign the corporation's checks. Cory paid for the

6

swather with one of those checks. Cory does not dispute that the account on which the check was drawn belonged to the corporation and that he signed it with no indication of his status as to the corporation. Cory has apparently missed the legal significance of those facts. Under such circumstances, he was not liable personally on the check under K.S.A. 84-3-402(c), which provides:

> "If a representative signs the name of the representative as drawer of a check without indication of the representative status and the check is payable from an account of the represented person who is identified on the check, the signer is not liable on the check if the signature is an authorized signature of the represented person."

The official Kansas comment to the statute provides in part:

> "Subsection (c) is directed at the check cases. It states that if the check identifies the represented person the agent who signs on the signature line does not have to indicate agency status. Virtually all checks used today are in personalized form which identify the person on whose account the check is drawn. *In this case, nobody is deceived into thinking that the person signing the check is meant to be liable.*" (Emphasis added.) K.S.A. 84-3-402, Comment 3.

See also *Lafarge North America Inc. v. Homeland Ready-Mix*, 697 F. Supp. 2d 1230 (D. Kan. 2009); *Earl Bryant Enterprises, Inc. v. Soptic*, No. 94,238, 2006 WL 1976587 (Kan. App. 2006) (unpublished opinion). Logically, then, the converse of this principle is that the represented party named on the check (here the corporation), not the signer of the check, is intended to be liable as the purchaser. We are aware of nothing in the record that would alert the defendants that they were selling the swather to anyone other than Edna Cory Investments, Inc.

Since the sale was to a corporation, it did not qualify as a consumer transaction that subjected the defendants to liability under the KCPA. The district court did not err in granting summary judgment to the defendants on Cory's claims for KCPA violations.

7

As to Cory's claim of RICO violations, the district court granted the defendant's summary judgment for the reason Cory did not make "specific claims of violation of Kansas Law, which would be in violation of the RICO act." Cory correctly argues that there is no requirement under RICO that there be a state law violation that provides the predicate act for a RICO violation. As this opinion will note later, RICO violations can occur based upon federal law violations as the predicate. However, if the district court reaches the correct result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *Robbins v. City of Wichita*, 285 Kan. 455, 472, 172 P.3d 1187 (2007).

Here, in setting forth his RICO claims in his petition, Cory made several conclusory allegations without particularity.

One of the elements of a civil RICO claim is that the plaintiff suffered an injury "by reason of defendant's violation of section 62." Joseph, Civil RICO, A Definitive Guide, pp. 27-28, 35 (American Bar Association 2d ed. 2000). Here, Cory alleged that Dewerff and Straub conducted their business through a pattern of racketeering activity in violation of 18 U.S.C. 1962(c) (2006) and conspired to do so which, under 18 U.S.C. 1962(d) (2006), amounted to another violation.

18 U.S.C. 1962(c) states:

> "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Section (d) of the statute then makes it unlawful to conspire to violate section (c).

8

"Racketeering activity" consists of no more and no less than the commission of a predicate act.' *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985)." Joseph Civil RICO, p. 79. 18 U.S.C. 1961(1) (2006) defines such activity by setting "forth an exhaustive list of predicate offenses," which include both state and federal law offenses. See Joseph Civil RICO, pp. 79-81.

From what we can gather from our review of Cory's somewhat rambling and disjointed petition, it alleged in very conclusory fashion that the defendants committed several acts that violated either 18 U.S.C. § 1341 (2006) (relating to mail fraud), or section 18 U.S.C. §1343 (2006) (relating to wire fraud). The details are lacking, however.

In order to state a violation of the wire or mail fraud statute, "it is necessary to show (1) a scheme to defraud, (2) participation by the defendant[s] in the scheme, (3) specific intent to defraud, and (4) the use of the United States wires or mails in furtherance of the scheme." Joseph Civil RICO, pp. 82-84. In one of Cory's allegations, he states merely that the defendants processed the check used to purchase the swather through the Federal Reserve System. He also lists what appear to be the dates of several phone calls without setting forth their content and how they were fraudulent. Additionally, since the crimes of both wire and mail fraud sound in fraud, Cory's pleading must satisfy the particularity requirements of K.S.A. 60-209(b). Cory's petition falls woefully short in this regard.

As to his claims that the defendants violated section (d) of 18 U.S.C. 1962 (conspiracy), Cory again sets forth allegations that the defendants conspired to commit RICO violations without particularity as to their unlawful and fraudulent nature. Under Section 1962(d), the plaintiff's complaint must allege, "at a minimum (1)[] the parties' specific agreement to commit at least two predicate acts and (2) contain supportive factual allegations. Mere conclusions are not enough." Joseph Civil RICO, p. 162.

9

In conclusion, Cory failed to satisfy the RICO pleading requirements. The Tenth Circuit Court of Appeals has recognized that the district court is not required to "match the factual assertions with the elements of all subsections of the RICO statute to determine if the complaint states a claim for relief." *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989). The court then stated: "After reviewing the record . . . , we conclude the trial court did not err in refusing to attempt to create order out of chaos. The complaint failed to state a claim under any conceivable matching of allegations." *Glenn*, 868 F.2d at 372. The same can be said for Cory's petition here.

The district court did not err in granting the defendants' motion for summary judgment on Cory's allegations of KCPA and RICO violations.

## The Sanction of Attorney Fees

Cory argues that it was an abuse of authority for the district court to impose sanctions upon him. The court found that Cory had violated K.S.A. 60-211 and imposed sanctions by awarding the defendants their attorney fees. Imposition of such sanctions is discretionary and the court's ruling will not be disturbed on appeal absent an abuse of discretion. *Wood v. Groh*, 269 Kan. 420, 429, 7 P.3d 1163 (2000); See *Thornburg v. Schweitzer*, 44 Kan. App. 2d 611, Syl. ¶¶ 6-8, 240 P.3d 969 (2010), *rev. denied* 293 Kan. ___ (September 21, 2011). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Unruh v. Purina Mills*, 289 Kan. 1185, 1202, 221 P.3d 1130 (2009). The party contending that the district court abused its discretion has the burden of showing such abuse. *In re Marriage of Hair*, 40 Kan. App. 2d 475, 484, 193 P.3d 504 (2008), *rev. denied* 288 Kan. 831 (2009).

Even though Cory did not list this issue in his "Statement of Issues" we normally would not be precluded from addressing it since he does mention it in the body of his brief. However, he fails to support his argument with any pertinent authority and that is akin to failure to brief it. See *State v. Berriozabal*, 291 Kan. 568, 594, 243 P.3d 352 (2010). He does not even mention in his brief K.S.A. 60-211(c), the statutory section cited by the district court as the basis for the award of sanctions against him. He has presented no basis for us to find an abuse. An issue not briefed by the appellant is deemed waived and abandoned. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 281, 225 P.3d 707 (2010).

Affirmed.

11



PRIORITY MAIL ®
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 107R, January 2008

Bill Cory
529 W 18th St
Concordia, KS 66901

Clerk, U.S. District Court
401 n. market, Rm 204
W. Wichita
KS 67202

RECEIVED
AUG 1 4 2012
CLERK, U.S. DIST COURT
WICHITA, KANSAS 67202

USPS TRACKING NUMBER

9505 5105 8309 2226 3653 27

U.S. POSTAGE
PAID
CONCORDIA, KS
AUG 13, '12
AMOUNT
$5.20
00056869-04